UNITED STATES of America ex rel.
Robert PHIPPS, Relator-
Appellant,

v.

Harold W. FOLLETTE, as Warden of Green Haven Prison, at Stormville, New York, Respondent-Appellee.

No. 693, Docket 34517.

United States Court of Appeals,
Second Circuit.

Argued April 7, 1970.

Decided May 27, 1970.

Joel Ziegler, Mineola, N. Y. (James J. McDonough, Attorney in Charge, Legal Aid Society of Nassau County, N. Y., Criminal Division, Mineola, N. Y., and Matthew Muraskin, Mineola, N. Y., of Counsel), for relator-appellant.

John G. Proudfit, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondent-appellee.

Before WATERMAN and FRIEND-LY, Circuit Judges, and ZAMPANO, District Judge.*

FRIENDLY, Circuit Judge:

This appeal by a state prisoner presents the question whether a station-house identification, alleged and here found to have been made under circumstances that were unduly suggestive, requires a conviction obtained in part on the basis of a subsequent court-room identification to be set aside in federal habeas.

Petitioner Robert Phipps was convicted in the County Court of Nassau County, New York, of burglary in the third degree, petit larceny, and possession of burglars' tools. The Appellate Division affirmed without opinion, 31 A.D.2d 1007, 300 N.Y.S.2d 296 (2d Dept. 1969), and leave to appeal to the Court of Appeals was denied.

█ As a result of notice by the prosecutor that he intended to rely on an identification to be made by the victim after show-up not conforming to *Wade* requirements, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the court conducted a pre-trial hearing with respect to possible taint.[1] The witness, Allen Mattson, lived in a back room of the service station that had been robbed. He testified he had been awakened in the early morning hours of February 2, 1967, by the sound of some coins hitting the floor. He opened the door leading from his room to the lighted sales office of the service station and was confronted by Warren Edwards, a co-defendant who pleaded guilty. A struggle ensued during which Mattson pushed Edwards over a snowplow and got on top of him. At this point Edwards yelled "Phipps,

Phipps, Phipps." A moment later another man entered through the broken lower panel of a wooden door. Mattson observed him try to wedge himself through this small opening some 10 feet away, crawl through the door and stand up inside the office. When the man picked up a sledge hammer, Mattson released Edwards. The second man then backed out through the opening in the door, with Edwards following. Mattson observed the man for 20 or 30 seconds, during part of which he was struggling with Edwards. He then called the police and gave them a description.

An hour later Mattson was called to the station-house and shown two men who were said to be suspects. The men, both black, were in a small room along with some police officers. One was Edwards, the other Phipps; Mattson identified both. He next saw Phipps at a preliminary hearing in a state court and again identified him as one of the burglars. He encountered Phipps at the pre-trial hearing and repeated the identification. He there testified that he recognized Phipps "through" three previous encounters—in the service station, at the police precinct, and at the preliminary hearing, but also that his identifications were not "because" of having seen Phipps at the station-house.

The state judge concluded that the station-house identification "was unfair and was a violation of defendant's constitutional rights." We cannot quarrel with that. Mattson had had a good, long look at Edwards and knew that both of the burglars were Negroes. When Phipps, a Negro, was displayed with Edwards shortly after the crime, the danger that Mattson would transfer the assurance of his recognition of Edwards to

---

* United States District Judge for the District of Connecticut, sitting by designation.

1. We commend this practice, see United States v. Ravich, 421 F.2d 1196 (2 Cir. 1970), which relieves defense counsel confronted with a court-room identification of having to decide his course of cross-examination concerning previous

identifications without knowing whether this may help or hurt. See United States v. Wade, *supra*, 388 U.S. at 240–241, 87 S.Ct. 1926, 18 L.Ed.2d 1149. We suggest that the district courts consider the formulation of a rule on this subject similar to that adopted in the District of Columbia. See Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230, 1237 and n. 4 (1968).

Phipps was great, and the danger could readily have been avoided. However, the judge further held that the People had sustained the burden "of showing that the identification by the witness of the defendant in the police station did not affect his or did not taint his original observation of the defendant so as to make his testimony as to the original identification of the defendant inadmissible for consideration of the jury at the trial." Mattson repeated his identification at trial and adhered to it despite a number of rather minor inconsistencies developed by defense counsel. Other damaging testimony was given by Edwards and police officers who had apprehended Edwards and Phipps; we will recount this at the end of this opinion.

On a petition for federal habeas the district judge, after reading the state record, concluded that the finding of lack of taint "is amply supported by the record and is, therefore, binding on the court," citing Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Indeed, he thought the finding "compels the conclusion that relative to the in-court identification the 'show-up' was not so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification,'" quoting from Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Accordingly he dismissed the petition but granted a certificate of probable cause.

Since the show-up here antedated United States v. Wade, supra, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 195, 18 L.Ed.2d 1178 (1967), the governing principle is that enunciated on the same decision day in Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). That is whether petitioner "is entitled to relief on his claim that in any event the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." [2] Although at first sight this test seems fairly simple and straightforward, it has given rise to difficult problems, many of which are discussed in the searching opinions of Judges McGowan, Leventhal and Wright in Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (in banc, 1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

■ As was recognized by all the judges in that case and by the state judge here, the required inquiry is two-pronged. The first question is whether the initial identification procedure was "unnecessarily" [Stovall] or "impermissibly" [Simmons] suggestive. If it is found to have been so,[3] the court must

---

**2.** In Simmons v. United States, supra, 390 U.S. at 384, 88 S.Ct. at 971, the Court said that identification at trial following pre-trial identification by photograph would "be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." It is not clear whether the slightly changed wording was intended to announce a different standard or was merely an adaptation to the different problem. Foster v. California, 394 U.S. 440, 442, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), repeated the Stovall phrasing.

**3.** Since in this case the state judge barred prosecution reference to the police station identification, we need not pass on whether it would be constitutional error to admit testimony about a pretrial identification that was "unnecessarily suggestive" but did not give rise to a "very substantial likelihood of irreparable misidentification." Judge McGowan in Clemons, 133 U.S.App.D.C. 27, 408 F.2d at 1248, held that this would be considered error in post-Stovall trials but that such a "per se exclusionary" rule would be too harsh for cases tried before Stovall. Judge Leventhal thought due process to be denied only when both factors are present, although he did note that in "post-Wade trials the situation may be different since the alerted court and prosecutor could take steps to confine the trial to unquestionable identification testimony," 133 U.S.App.D.C. 27, 408 F.2d at 1251. Judge Wright

then proceed to the question whether the procedure found to have been "unnecessarily" or "impermissibly" suggestive was so "conducive to irreparable mistaken identification" [*Stovall*] or had such a tendency "to give rise to a very substantial likelihood of irreparable misidentification" [*Simmons*] that allowing the witness to make an in-court identification would be a denial of due process. The only Supreme Court decision that has ruled out an in-court identification on this basis is Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); [4] see also Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968).

■ The instruction that resolution of this issue "depends on the totality of the circumstances," 388 U.S. at 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 although probably as good a start as could have been made, does not instruct very much. There can be no doubt that, once a witness has made an identification, the image of the person identified will remain in his mind to some degree. Yet the Supreme Court, knowing this quite as well as we do, recognized that the witness would not necessarily be prevented from saying in court that the defendant was the man. The effort must be to determine whether, before the imprint arising from the unlawful identification procedure, there was already such a definite image in the witness' mind that he is able to rely on it at trial without much, if any, assistance from its successor.[5] See United States v. Wade, *supra*, 388 U.S. at 241, 87 S.Ct. 1926, 18 L.Ed.2d 1149. In making this subtle determination much will depend on the witness' ini-

tial opportunity for observation and also on whether he was motivated to make a careful observation of the perpetrator. A person unaware that a crime is being committed, see Wall, Eye-Witness Identification in Criminal Cases 125–27 (1966), or even perhaps a bystander who knew that one had been, would have less of a desire to seek out and retain such an image than would the victim. Quick and sure identification at the first exposure also affords some, although by no means conclusive, evidence of the definiteness of the earlier image. See United States v. Ayers, 426 F.2d 524 (1970). On the other hand, initial uncertainty would tend, although again not conclusively, to a fear that the witness was relying on the image formed at the legally impermissible confrontation. See Wall, *supra*, at 113–19. Lapse of time between the crime and the confrontation is also important; the longer the interval, the greater the dangers that the initial image will have dimmed and that the second image will play a significant role. Also, a long interval between the initial observation and the trial coupled with an improper confrontation a comparatively short time before the witness appears in court enhances the danger that he may be relying on his most recent encounter. And there is always the question how far in-court identification is affected by the witness' observing the defendant at the counsel table. Mere statement of these difficulties indicates what great weight must be given to the determination of the judge who saw and heard the witness. See Clemons v. United States, *supra*, 133 U.S.App.D.C. 27, 408 F.2d at 1241–1242, 1246. As said by Judge Lev-

---

viewed all unnecessarily suggestive confrontations as a violation of due process, regardless of when they occurred, 133 U.S.App.D.C. 27, 408 F.2d at 1252.

4. We are unable to share Mr. Justice Black's view that the majority opinion was ambiguous on this point. See 394 U.S. at 445, 89 S.Ct. 1127, 22 L.Ed.2d 402.

5. The varying conclusions of the district judge, affirmed by the Court of Appeals, with respect to in-court identifications by different witnesses who had participated in an unnecessarily suggestive viewing of the defendant Hines, and the discussion with respect to the witness Jones, in Clemons v. United States, *supra*, 133 U.S.App.D.C. 27, 408 F.2d at 1241–1242, 1246, are a remarkably interesting application of this approach.

enthal, speaking also for Judge Burger, as he then was, "these matters are properly to be resolved by the trial judge, at least in the first instance, and * * * appellate resolution marks the rare exception," 133 U.S.App.D.C. 27, 408 F.2d at 1252. The same principle must apply in federal habeas.

■ Under these principles we see no basis for rejecting the conclusion of the state judge that Mattson was able to identify Phipps through his encounter at the service station rather than in the police station. Mattson was a prospective victim of an assault, not a mere bystander. There was time enough for the second burglar's image to become indelibly seared in his memory. His 20 to 30 second observation was much more than a fleeting glance, as anyone who watches the second hand of a clock sweep by for that period can attest. Mattson never entertained the slightest doubt about the identity of the second man. When he saw Phipps only an hour or so after the burglary, he immediately identified him, as he was to do on three later occasions. All this distinguishes the case sharply from Foster v. California, *supra*, on which Phipps heavily relies. There, after seeing the defendant in a suggestive lineup followed by a face-to-face confrontation, the witness still could not be sure the defendant was the right man and became convinced only after another misleading lineup a few days later. The Court considered it incredible that a witness who had been through this experience could make an in-court identification free from the taint of what had gone before.

We are fortified in affirming the denial of the writ by the abundant other evidence that Phipps was the right man. Edwards [6] told in great detail how he had recruited Phipps as a collaborator and what they had done. He corroborated Mattson's testimony that he had thrice called out "Phipps" for help.[7] Mattson observed the "second man" to be wearing a black coat; Phipps was wearing one on his arrest less than an hour later. Mattson saw Edwards and the "second man" drive away in a 1960 Buick convertible; shortly thereafter the police stopped such a car and discovered Edwards and Phipps in it. A police officer found a quantity of small bills and change in Phipps' coat pocket. In short this was not at all a case where the prosecution depended upon an identification alone or almost so.

We need not here decide whether such other evidence can be considered in determining whether the in-court testimony was "conducive to irreparable *mistaken* identification" (emphasis supplied), as Judges Leventhal and Burger seem to have thought in *Clemons,* 133 U.S.App.D.C. 27, 408 F.2d at 1251; whether such evidence can be considered only as demonstrating harmless constitutional error, as defined in Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); or whether in a case like this where the confrontation was pre-*Stovall* but the trial post-*Stovall,* the less stringent test of Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), should be applied, as Judge Wright has proposed for pre-*Stovall* trials, Clemons v. United States, *supra,* 133 U.S.App.D.C. 27, 408 F.2d at 1253. Taking the view most fa-

6. Edwards, who had pleaded guilty, and was due to be sentenced the day after Phipps' trial, testified that he hoped to be admitted to a house for the treatment of addicts rather than serve a prison term. In fact he received such a sentence. He had been previously told by the judge, correctly so far as appears, that the maximum sentence he could be given would be six and the minimum five years.

7. At the preliminary hearing defense counsel put a question to Mattson in terms of Phipps' having entered after a call by Edwards for "help, help, help." We do not regard Mattson's affirmative answer to be so contradictory of his testimony as appellant claims.

vorable to Phipps, we would find the admission of Mattson's testimony to have been harmless beyond a reasonable doubt.[8]

Affirmed.

---

8. Although in Foster v. California, *supra*, 394 U.S. at 444, 89 S.Ct. 1127, 22 L.Ed. 2d 402, the Supreme Court declined to rule upon the question of harmless error "in the first instance" and remanded for such a ruling by the California courts, that case was being considered on direct review of a criminal proceeding still pending in the state courts. It would seem that before setting aside a state conviction for "constitutional error," a federal habeas court would be bound to consider whether the error was harmless, see Stovall v. Denno, *supra*, 386 U.S. at 306, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (dissenting opinion of Mr. Justice Black)—if indeed, the test in habeas is quite that severe. And, particularly when, as here, there has been no federal hearing, a court of appeals can make this determination quite as well as the district judge.