**UNITED STATES ex rel. Edward Stanley MILLER and Joseph T. Quinones, Appellees,**

v.

**J. E. LaVALLEE, Warden of Clinton Prison, Respondent-Appellant.**

**No. 374, Docket 35395.**

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 1970.

Decided Nov. 16, 1970.

---

Michael E. Timm, New York City, for appellees.

Stephen P. Seligman, Deputy Asst. Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., Louis J. Lefkowitz, Atty. Gen., for appellant.

Before WATERMAN, HAYS and FEINBERG, Circuit Judges.

PER CURIAM:

Petitioners, who are serving lengthy New York prison sentences imposed on January 11, 1963 after they had been, at a joint trial, convicted of having committed robbery in the first degree, obtained a writ of habeas corpus from the district court below, Judd, J., which, after an evidentiary hearing, was sustained on the ground that a pretrial viewing of the petitioners by one of the robbery victims "created such a risk of misiden-

tification that the conviction should not stand." F.Supp. (EDNY, July 29, 1970). Respondent Warden has appealed and contends that the district court applied the wrong standard to these pre-*Wade*[1] identifications and that, in any event, in view of the entire state case, any error in the identifications was harmless error.

We agree that less stringent standards are applicable to pre-*Wade* identifications, Stovall v. Denno, 388 U. S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), than to identifications made subsequent to that opinion, and, indeed, we have set out appropriate guidelines in United States ex rel. Rutherford v. Deegan, 406 F.2d 217 (2 Cir.), cert. denied, 395 U.S. 983, 89 S.Ct. 2145, 23 L.Ed.2d 771 (1969). However, the application of the *Rutherford* guidelines involves mixed questions of fact and law, especially since subtle psychological factors often affect identifications. Judge Judd held a thorough hearing both on the identification issue and on the probable effect that the identification had upon the result reached at petitioners' trial, and he weighed the evidence by the applicable standard, that of whether the viewing, in the light of the totality of surrounding circumstances, was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [petitioners were] denied due process of law." Stovall v. Denno, *supra* at 302, 87 S.Ct. at 1972, see *Rutherford, supra* at 219. Although we might well have reached a different conclusion than Judge Judd reached on the same evidence, we are not convinced that his findings of fact are clearly erroneous. We have in mind that when the issue the trial judge must determine relates to the validity of a witness's identification of a defendant we ought to accord great weight to the determination the judge makes, for he has seen and has heard that witness. And, as we

1. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); See also Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

have held in United States ex rel. Phipps v. Follette, 428 F.2d 912, 915–916 (2 Cir. 1970), this principle must apply in federal habeas if the federal judge has held a full evidentiary hearing. Accordingly, we affirm the order Judge Judd entered.

Because of our disposition of respondent's appeal, we do not reach the points raised on petitioners' cross-appeal.

Affirmed.

HAYS, Circuit Judge (dissenting):

The robbery involved in this case took place on the morning of March 25, 1962. At trial, the witness Thomas Walker, owner of the bar and grill which was robbed, testified that two men, whom he identified as appellees, drank beer, played a pinball machine and the jukebox, and ate sandwiches for about an hour before the crime was committed. Walker's testimony was largely corroborated by his son, Thomas Walker, Jr., who was in the bar for the entire time, and by Walter Funk, a customer who had entered some 15 minutes after appellees. It was eleven days later, on April 5, 1962, that the allegedly impermissive identification took place; of the three men who later identified appellees, only Walker, Sr., participated in that identification.

The District Court found that the identification procedure employed in this case was "unnecessarily suggestive." Simmons v. United States, 390 U.S. 377, 381, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). As defendant Quinones' version of the "show-up" was corroborated in some respects by a detective who was present, and lent support by the inconsistencies in Walker Sr.'s testimony at the habeas hearing, the finding that defendants were disheveled and bloodied is not clearly erroneous.

A finding that the identification procedure was "unnecessarily suggestive," however, does not mean that it "was so unnecessarily suggestive and conducive to irreparable mistaken identification that [petitioner] was denied due process of law." Stovall v. Denno, supra at 302, 87 S.Ct. at 1972. As this court pointed out recently in United States ex rel. Phipps v. Follette, 428 F.2d 912 (2d Cir. 1970):

" * * * the required inquiry is two-pronged. The first question is whether the initial identification procedure was 'unnecessarily' or 'impermissibly' suggestive. If it is found to have been so, the court must then proceed to the question whether the procedure found to have been 'unnecessarily' or 'impermissibly' suggestive was so 'conducive to irreparable mistaken identification' or had such a tendency 'to give rise to a very substantial likelihood of irreparable misidentification' that allowing the witness to make an in-court identification would be a denial of due process." 428 F.2d at 914–915 (citations and footnotes omitted).

*Phipps* provides considerable guidance in resolving this second issue:

1. " * * * much will depend on the witness' initial opportunity for observation and also on whether he was motivated to make a careful observation of the perpetrator." *Id.* at 915.

2. "Quick and sure identification at the first exposure affords some, although by no means conclusive, evidence of the definiteness of the earlier image. * * * On the other hand, initial uncertainty would tend, although again not conclusively, to a fear that the witness was relying on the image formed at the legally impermissible confrontation. * * * " *Id.* at 915.

3. "Lapse of time between the crime and the confrontation is also important; the longer the interval, the greater the dangers that the initial image will have dimmed

and that the second image will play a significant role." *Id.* at 915.

In light of these factors there was not a substantial likelihood of irreparable misidentification in the present case. The robbers were present in the bar and grill for about an hour prior to the commission of the crime. This afforded the witnesses an unusually long period of time to observe the two men. Even after the robbery began, the witnesses remained in a position to view the participants while they rifled the register; surely the witnesses were, at this time, most highly "motivated to make a careful observation of the perpetrator[s]." In *Phipps,* the witness had observed the defendant only for a matter of seconds, yet this was deemed sufficient as "[h]is 20 to 30 second observation was much more than a fleeting glance, as anyone who watches the second hand of a clock sweep by for that period can attest." *Id.* at 916.

The identification in the instant case, as in *Phipps,* was made swiftly and without hesitation. Finally the identification in the instant case took place only eleven days after the robbery—clearly not the lengthy delay which creates the danger that "the initial image will have dimmed and that the second image will play a significant role." *Id.* at 915. See, e. g., United States ex rel. Rutherford v. Deegan, 406 F.2d 217 (2d Cir. 1969) (10 days). If anything, this case is, on the whole, a stronger one for the application of the *Phipps* rule than was the *Phipps* case itself.

In addition, we have here the identifications made by the other two witnesses who were not present at the allegedly impermissible confrontation; of the two, the identification by Walker, Jr. is sufficiently reliable to render it quite unlikely that Walker, Sr.'s identification was mistaken. See United States ex rel. Phipps v. Follette, *supra* at 916–917 and n. 8 (2d Cir. 1970). His father did not reveal to him the details of what transpired at the police station, and Walker, Jr. subsequently identified appellees out-side the presence of his father through mug shots and a lineup in which at least 5 men including the suspects took part.

I would reverse the order of the district court granting appellees' application for a writ of habeas corpus.