UNITED STATES of America ex rel. Milton RIVERA, Relator-Appellant,

v.

Charles L. McKENDRICK, as Warden of Wallkill State Prison, Ulster County, New York, Respondent-Appellee.

No. 306, Docket 72–1701.

United States Court of Appeals, Second Circuit.

Argued Jan. 12, 1973.

Decided Feb. 15, 1973.

**260**

John R. Hupper, New York City (J. Barclay Collins, New York City, on the brief), for appellant.

Lillian Z. Cohen, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of State of New York, and Samuel A. Hirshow-itz, First Asst. Atty. Gen., on the brief), for appellee.

Before LUMBARD, KAUFMAN and MANSFIELD, Circuit Judges.

LUMBARD, Circuit Judge:

Milton Rivera appeals from an order of the Southern District, dated April 19, 1972, which denied, after a hearing, his petition for habeas corpus. We affirm.

Rivera was convicted of robbery, assault, and possession of a dangerous weapon after trial before a jury in Kings County in 1965. On October 21, 1969 Rivera filed a petition for habeas corpus, alleging that his state court conviction, "which was based solely on the identification testimony of two victims of the crimes, was obtained in violation of due process of law, because the victims' in-court identification of Rivera was tainted by impermissibly suggestive pretrial identification procedures used by the police." U. S. ex rel. Rivera v. McKendrick, 448 F.2d 30, 31 (2d Cir. 1971), cert. denied 404 U.S. 1025, 92 S. Ct. 678, 30 L.Ed.2d 675 (1972). See Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); United States ex rel. Phipps v. Follette, 428 F.2d 912, 914–915 (2d Cir.), cert. denied, 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970). Judge McLean denied the petition without holding an evidentiary hearing. Rivera appealed from this summary denial and we reversed, finding that "the totality of circumstances surrounding the out-of-court confrontations in this case—the photographs and then the one-man show-up twelve days after the crime—lead us to conclude that the pre-trial identification procedures used here were unnecessarily suggestive and conducive to mistaken identification." United States ex rel. Rivera v. McKendrick, *supra* at 34.

Because the record was inadequate for a determination of whether the witnesses' in-court identification was irrepar-

ably tainted by these procedures, we remanded the case to the district court for an evidentiary hearing on this matter.

As a full statement of the facts is contained in our opinion on the prior appeal, see United States ex rel. Rivera v. McKendrick, *supra*, we here repeat only so much as is necessary: On March 5, 1965, two men, one dark-skinned and the other light-skinned, robbed a grocery store in Brooklyn. Two people were in the store at the time: Vega, an employee, and Vargas, a customer. The dark-skinned man, who held a gun on the two victims while the light-skinned man emptied the cash register, was later identified as Torres, Rivera's co-defendant. As the light-skinned man attempted to take Vega's wallet, a struggle broke out during which Vargas was shot twice. The light-skinned accomplice fled after the first shot and Torres followed soon after. The length of time that the two men spent in the store was estimated at three minutes. Torres was quickly arrested. Three days later an alarm was sent out for Rivera.[1]

According to the trial testimony, both Vega and Vargas were subsequently shown a group of photographs of different men, including one of Rivera, for purposes of identification. There was also some suggestion that Vega may have been shown Rivera's picture alone, either before or after the showing of the group of photographs. However, because New York has a rule which prohibits a witness from testifying about prior photographic identifications of a defendant, there was no testimony at the trial as to whether Vega or Vargas picked out Rivera's photographs, and the photographs which were shown to the victims were not offered in evidence.

Rivera was finally arrested in his attorney's office on March 17, 1965. Detective Maxwell, the police officer investigating the case

. . . first took Rivera to the station house, and he then called Vega and instructed him to come to the hospital where he was "going to have someone down for him [Vega] to identify." Maxwell presented Rivera to Vega in the hospital waiting room and asked Vega whether he "knew the guy." Vega said "yes" and Rivera remained silent. Maxwell then took Rivera into Vargas' hospital room, but there was no testimony as to whether Vargas identified him there. Maxwell never took either witness to the police station to identify Rivera in a lineup.

Both Vega and Vargas testified at trial in the Kings County Supreme Court, and both made an in-court identification of Rivera as the light-skinned man involved in the robbery.

United States ex rel. Rivera v. McKendrick, *supra*, 448 F.2d at 31–32.

The jury returned a verdict of guilty against both Rivera and Torres and the Appellate Division, Second Department, affirmed. People v. Rivera, 28 A.D.2d 687, 280 N.Y.S.2d 749 (2d Dept. 1967). Thereafter, the New York Court of Appeals (4–3) also affirmed. People v. Rivera, 22 N.Y.2d 453, 293 N.Y.S.2d 271, 239 N.E.2d 873 (1968).

We instructed the district court to inquire on remand into the circumstances surrounding the photographic sessions and the hospital confrontations, as well as the question of whether the victims had an adequate opportunity to observe Torres' accomplice—all with a view to making a determination of the presence or absence of taint. Pursuant to our mandate Judge McLean conducted a thorough hearing on the question of taint in which all these matters were fully explored. Detective Maxwell and the two victims, Vega and Vargas, testified about events on the night of the robbery and about the subsequent pretrial identifications. Judge McLean

---

1. Detective Maxwell testified at the hearing before Judge McLean that Rivera came under suspicion after an investigation of Torres' background and the places that Torres frequented in the Bronx revealed that Rivera fit the description of the accomplice and was known as an associate of Torres.

found that the victims had had ample opportunity during the robbery to get a good look at the second man. The delicatessen was "a very small, narrow slot of a" store where "anybody in it could get a reasonably good idea of what was going on in any part of the establishment."[2] During the approximately three minutes that the robbery was in progress, Vega was able to get a "good look" at Torres' accomplice, and Vargas, though slightly further away, also had "a good look at" the dark-skinned robber.

Immediately after the robbery Vega described the second robber "as being a light skinned Puerto Rican of about 21 years of age, thin faced"—a description which matches Rivera's physical appearance. The evidence which was absent from the trial record but developed at the hearing concerning the two photographic identifications indicates that both Vega and Vargas positively selected Rivera's photograph as that of the accomplice from a group of photographs that were presented to them.[3] Similarly, not only Vega, but also Vargas unhesitatingly identified Rivera as Torres' accomplice during the hospital show-up.

Judge McLean stated that:

[b]oth these men testified before me that they knew all the time from the very beginning that this was the man who had robbed Vega and participated in the holdup . . . I accept their testimony. I find that they did know from the very · beginning that Rivera was the man, as I have no doubt he was.

Judge McLean concluded, therefore, that the victims' in-court identifications were not tainted by the prior identifications which we thought had been impermissi-

bly suggestive. United States ex rel. Rivera v. McKendrick, *supra,* 448 F.2d at 32. This finding of the absence of taint is fully supported by the record at the hearing. We therefore affirm Judge McLean's denial of the petition.

We again commend assigned counsel, John R. Hupper and J. Barclay Collins, for their diligent and expert exposition of Rivera's claims.

Affirmed.

---

2. Judge McLean's findings were made orally at a hearing held on April 17, 1972. The language quoted here and later in the text comes from Judge McLean's findings at this hearing.

3. Despite the suggestion in the trial testimony that Vega may have been shown a single photograph of Rivera for identifi-

cation purposes, no evidence as to this matter was developed at the hearing. It appears that both victims were presented with a group of photographs. Although the specific photographs which were used could not be located, Detective Maxwell testified that it was his practice at that time to select pictures of people from the same age and ethnic group as the suspect.