UNITED STATES of America ex rel.
John J. PELLA,
Petitioner-Appellant,

v.

Theodore REID, Superintendent of
Albion Correctional Facility,
Respondent-Appellee.

No. 249, Docket 75–2076.

United States Court of Appeals,
Second Circuit.

Argued Oct. 1, 1975.

Decided Dec. 11, 1975.

Edward F. Gerber, Syracuse, N. Y. (Ali & Gerber, Syracuse, N. Y.), for petitioner-appellant.

Barbara Shore Resnicoff, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York), for respondent-appellee.

Before WATERMAN, OAKES and MESKILL, Circuit Judges.

WATERMAN, Circuit Judge:

On December 31, 1969, following a jury trial and conviction of first degree robbery and second degree burglary in Oneida County, New York, the petitioner, John J. Pella, was sentenced to concurrent 25 and 15 year terms. Having exhausted his state remedies, he applied to the United States District Court for the Northern District of New York for a writ of habeas corpus on the grounds that he was arrested without probable cause, that the identification procedures thereafter used by the police were "unnecessarily suggestive" under *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and that at his trial he was denied the right to cross-examine the victim of the alleged crime. Judge Foley issued an order to show cause why the writ should not be granted, and, after the receipt of returns to the order, Judge Foley in a lengthy and exhaustive opinion concluded that petitioner had re-ceived in the state court a fair trial and one which complied with all federal constitutional requirements. He denied and dismissed the petitioner's petition, and this appeal followed. Finding no error in the result reached below, we affirm the denial of the writ and the dismissal of the petition.

On the morning of April 19, 1968, the Cingarelli home in Rome, New York, was burglarized by three men. At the time of the burglars' forced entry into the house, Mr. Cingarelli was at work and Mrs. Cingarelli was off doing errands. When she returned home, Mrs. Cingarelli noted marks around the jamb of the door, but entered the house only to face the burglars inside. She was threatened by guns, grabbed by the neck and forced to the floor by two men who then tied her with the cord from venetian blinds and stuffed towels in her mouth. She screamed. The three intruders then escaped via the back door, taking with them their loot—four one dollar bills stolen from Mrs. Cingarelli's pocketbook. Shortly thereafter, at about 1:45 p. m., petitioner was arrested while riding in a car with an alleged fourth compatriot in the crime, Netro, in a car headed for Syracuse. The other two suspected burglars, Rinaldi and Centolella, had earlier been apprehended near a shopping center in Rome. Four one dollar bills were found in Centolella's pocket.

Several hours later, two bystanders, Thomas Alder and Thomas Rees, who had witnessed portions of the comings and goings of the burglars around the Cingarelli house, were brought to police headquarters. They were shown a batch of photographs, one of which was of petitioner Pella, but neither of them was able to identify him. Alder and Rees were then ushered into another room to view a line-up in which petitioner was standing. Rees identified Pella as one of the men involved in the burglary, but Alder was unable to make any identification. Three days later, Rees and Alder returned to headquarters and were

shown photographs of the line-up. At this point, Alder was finally able to identify Pella. At the trial, neither of the pre-trial identifications made of Pella were introduced into evidence. Rees and Alder were, however, permitted to make in-court identifications of Pella.

■ Judge Foley concluded that there was no probable cause for petitioner's arrest. The state trial judge had held the contrary. We agree with Judge Foley's conclusion. Pella was arrested by one Dillon, a New York State trooper, somewhere on the outskirts of Syracuse, New York, after Dillon had been radioed information from a Trooper Risley. The latter had apparently seen the car containing Pella on a highway heading away from Rome toward Syracuse, and, although the trooper did not recognize any of the occupants, he did recognize the license plate number of the car. The significance of that recognition is unclear, however, as there was no evidence that either the license plate or the car was involved in the particular crime occurring in Rome earlier that day or that the car was sought in connection with any other crimes. There was no evidence that Dillon or Risley had any other information linking the car to the crime, and Trooper Dillon is now dead. While respondent suggests that the police had their own undisclosed reasons for connecting the car observed leaving Rome with the Cingarelli burglary, their suggestions do not point to a conclusion contrary to that reached by Judge Foley. Thus, viewing the accumulated facts in light of our holdings and those of the Supreme Court on the requisites of probable cause, we find no error in Judge Foley's holding on this issue. *See Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Giordenello v. United States,* 357 U.S. 480, 486, 78 S.Ct. 1245, 22 L.Ed.2d 1503 (1958); *United States ex rel. Coffey v. Fay,* 344 F.2d 625, 630 (2d Cir. 1965); *United States ex rel. Wilson v. LaVallee,* 367 F.2d 351, 352 (2d Cir. 1966); *see also United States v. Hernandez,* 486 F.2d 614 (7th Cir. 1973), *cert. denied,* 415 U.S.

959, 94 S.Ct. 1488, 39 L.Ed.2d 574 (1974); *United States v. Cage,* 494 F.2d 740 (10th Cir. 1974). As the District Court noted, however, after a defendant has been indicted and convicted, an illegal arrest, without more, is ordinarily insufficient to sustain a federal writ of habeas corpus. *United States ex rel. Burgett v. Wilkins,* 283 F.2d 306 (2d Cir. 1960) (per curiam). We must thus focus upon the subsequent post-arrest pre-trial identifications of Pella.

■ Petitioner challenges the pre-trial identification procedures, and the subsequent in-court identifications of him by Rees and Alder, on two grounds. First, he contends that the pre-trial line-up and photographic displays were fruit of the so-called poisonous tree, *i. e.,* a product of the illegal arrest, and that this poison was prejudicially injected into the trial causing him to be deprived of a fair trial. Second, he contends that the pre-trial identification procedures were themselves "unnecessarily suggestive and conducive to irreparable mistaken identification" within *Stovall v. Denno, supra,* 388 U.S. at 302, 87 S.Ct. at 1972. The Supreme Court has prescribed that our inquiry in cases where a primary illegality has been demonstrated must be " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). Here the pre-trial identifications made by Rees and Alder were not admitted at trial. Thus, the sole question is whether the in-court identifications made by those witnesses were infected with the primary taint. Appellant relies heavily on our holding in *United States v. Edmons,* 432 F.2d 577 (2d Cir. 1970) in support of his contention that the in-court identifications were the poisonous product of unlawful police action and exploitation. There, we reversed the defendant's conviction, finding that "the police, not knowing the

perpetrator's identity, [made] an arrest in deliberate violation of the Fourth Amendment for the very purpose of exhibiting a person before the victim and with a view toward having any resulting identification duplicated at trial . . . ." 432 F.2d at 584. Such an illegal arrest made for the precise purpose of securing identifications that otherwise would not have been obtained epitomized, in our view, the evils sought to be prevented by the exclusionary rule. Here, however, there is no indication that the defendant was taken into custody on a deliberately false pretext in a dragnet arrest as in *Edmons.* Nor is there any evidence of bad faith on the part of either Trooper Risley or Trooper Dillon. It would seem that the circumstances surrounding the arrest in the instant case fall within the less onerous fact pattern described in *Edmons,* where the "officers crossed the line, often a shadowy one, that separates probable cause from its lack . . . ." 432 F.2d at 583. As we stated in *Edmons* in restricting our holding there:

> We are not obliged here to hold that when an arrest made in good faith turns out to have been illegal because of lack of probable cause, an identification resulting from the consequent custody must inevitably be excluded. 432 F.2d at 584.

We agree with the government that *Edmons* is not controlling here. As the identifications of Pella made by Rees and Alder from the line-up and photographic display were not introduced as evidence at trial, and as we find substantial evidence that the in-court identifications were based on an independent source of recollection, we find no reason to doubt the validity of Judge Foley's reasoned conclusion that the taint of the prior illegality and its pre-trial fruit had

been dissipated. At trial, Rees repeatedly affirmed that he was positive of his identification of Pella and that the pre-trial identification procedures in no way aided his recollection. While petitioner makes much of Alder's statement at trial that he was aided in his identification by the photograph he had seen of Pella after the line-up, Alder explained at a pre-trial hearing that he had asked for an additional side-view photograph of Pella after the line-up only to assure himself that this was the man, as he had viewed Pella from the side when he observed him in the neighborhood of the Cingarelli home. Thus, it would appear that he derived aid from the photographs for purposes of his pre-trial identification— not for the in-court identification. Our conclusion that the in-court identifications were sufficiently independent of the earlier taint is further bolstered by the testimony that both witnesses had had sufficient opportunity to observe the petitioner on the morning in question, and that their recollections had not been improperly cultivated by the pre-trial identification procedures. We will examine that testimony in greater depth in connection with our next inquiry; and accordingly discuss the second prong of petitioner's challenge to the in-court identifications, a challenge based upon the impropriety of the pre-trial identification procedures themselves.

As the line-up was here conducted in the presence of counsel, the principle governing this due process challenge to the pre-trial procedures is that enunciated by the Court in *Stovall v. Denno, supra,*[1] *United States ex rel. Rutherford v. Deegan,* 406 F.2d 217 (2d Cir.), *cert. denied,* 395 U.S. 983, 89 S.Ct. 2145, 23 L.Ed.2d 771 (1969). The effort must be made to determine whether the initial identification was "unnecessarily" suggestive.[2] If it is found to have been so,

---

1. Pella was not entitled to be represented by counsel at the photographic displays. *See United States ex rel. Johnson v. New York Dept. of Correctional Services,* 461 F.2d 956 (2d Cir. 1972) (no right to counsel at post-indictment, pre-trial display); *United States v. Bennett,* 409 F.2d 888, 898–900 (2d Cir.), *cert.*

*denied sub nom. Jessup v. United States,* 396 U.S. 852, 90 S.Ct. 117, 24 L.Ed.2d 101 (1969) (no right to counsel at post-arrest pre-indictment display).

2. In *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the

the court must then ask whether that procedure was so "conducive to irreparable mistaken identification"[3] that allowing the witness to make an in-court identification would be a denial of due process. *United States ex rel. Phipps v. Follette,* 428 F.2d 912, 914–15 (2d Cir.), *cert. denied,* 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970). Resolution of that issue, we are taught, is to depend "on the totality of the circumstances." *Stovall v. Denno, supra,* 388 U.S. at 302, 87 S.Ct. at 1972. *See United States ex rel. Gonzalez v. Zelker,* 477 F.2d 797, 801 (2d Cir.), *cert. denied,* 414 U.S. 924, 94 S.Ct. 254, 38 L.Ed.2d 158 (1973); *United States ex rel. Cannon v. Montanye,* 486 F.2d 263, 267 (2d Cir. 1973), *cert. denied,* 416 U.S. 962, 94 S.Ct. 1982, 40 L.Ed.2d 313 (1974).

■ We agree with the District Court's conclusion that the pre-trial identification procedures here were free from unnecessary suggestiveness, and that even if there is some hint of such impropriety, we find no indication that the procedures were conducive to the irreparable misidentification of petitioner. Although Pella was in custody at the time the photographs were shown to Alder and Rees, we find no impropriety in that procedure for, as we have recently confirmed, it is not necessarily a violation of due process to have a witness view photographs even when the defendant is available for a line-up. *United States v. Boston,* 508 F.2d 1171, 1176 (2d Cir. 1974), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2401, 44 L.Ed.2d 669 (1975). But see *United States v. Fernandez,* 456 F.2d 638, 641 n. 1 (2d Cir. 1972). The fact that Pella, a short man, was placed in a line-up with mostly taller men, while certainly not the most desirable procedure, does not by itself warrant a finding of unnecessary suggestiveness. *See Neil v. Biggers,* 409 U.S. 188, 199, 93

S.Ct. 375, 34 L.Ed.2d 401 (1972); *United States v. Hines,* 147 U.S.App.D.C. 249, 455 F.2d 1317, 1329–30 (1972). Nor does the fact that Centolella, another suspect, was included in the line-up negate the propriety of the procedure. *See United States v. Hines, supra; United States v. Rodriguez,* 363 F.Supp. 499, 501 (D.C. Puerto Rico 1973). While Alder's initial inability to identify Pella at the line-up and his subsequent ability some three days later to make an identification from photographs taken of that same line-up might raise some doubts as to the reliability of his recollection, those doubts are not so substantial as to warrant a finding of "unnecessary" or "impermissible" suggestion. It is to be emphasized that Rees, the primary witness, was able to identify Pella at the line-up. Significantly, the state trial judge conducted a rather extensive hearing on the question of whether the identification procedures violated the *Stovall* or *Simmons* tests, and, as Judge Foley noted, his findings are entitled to great weight here. *Clemons v. United States,* 133 U.S.App.D.C. 27, 408 F.2d 1230, 1241–42, 1246 (1968), *cert. denied,* 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969). *See also United States ex rel. Miller v. LaVallee,* 436 F.2d 875, 876 (2d Cir. 1970), *cert. denied,* 402 U.S. 914, 91 S.Ct. 1367, 28 L.Ed.2d 657 (1971).

■ We find the facts of the case before us to be distinguishable from the cases cited to us by petitioner where pre-trial identification procedures have been found to be violative of due process rights under the *Stovall* test. In *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), the court reversed the defendant's conviction on the grounds that the pre-trial confrontations "were so arranged to make the resulting identifications virtually inevitable," and

test established by the Court for use in cases involving pre-trial identification by photograph contains the slightly different language "impermissibly" suggestive. In the *Simmons* and *Stovall* progeny, the tests have been virtually equated. *See United States ex rel. Phipps v. Follette,* 428 F.2d 912, 914–15 (2d Cir.), *cert.*

*denied,* 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970).

3. 388 U.S. at 302, 87 S.Ct. 1967. Or, whether the procedure is so "conducive to irreparable misidentification" under *Simmons v. United States, supra.*

thus represented a compelling example of unfair line-up procedures. 394 U.S. at 442–43, 89 S.Ct. at 1129. There, as here, a witness was unable to identify the suspect until his third attempt at identification. But the analogy ends there. For in that case, in contrast to the procedure here, the court permitted a one-to-one confrontation between Foster and the witness, a practice which the Court in *Stovall* had noted was widely condemned. Moreover, there the police also conducted a third line-up, after the witness had already failed to identify Foster at two previous corporeal confrontations. In that third successful identification procedure, Foster was the only person who had been included among the men shown in the first line-up. Examining the procedures employed by the police in the case before us in the light of the "totality of the circumstances," we do not find the suggestiveness or element of inevitability present in *Foster,* the element which constitutes a violation of the accused's due process rights.[4] Furthermore, considering the factors set forth in *Neil v. Biggers, supra,* we find no "very substantial likelihood of irreparable misidentification."[5] 390 U.S. at 384, 88 S.Ct. at 971. There is evidence that both Rees and Alder had ample opportunity to view the burglars on the morning of April 19. While concededly only a bystander, Rees testified that as he was getting into his car on that morning, he saw petitioner and two others running toward him from a distance of about 70 feet away to a point quite near him where they paused for a time on an embankment and he was able to observe them for 10–15 seconds. In addition, he later aided in the pursuit of the burglars. He stated at trial that he was motivated to retain a lasting image of petitioner because Pella reminded Rees of one of Rees's close friends. Alder, working on a construction site near the Cingarelli home, testified that he first observed three men walk by the house where he was working at about 8:00 a. m. He stated that he noticed them because he had not seen them in the neighborhood before, and because of the unusual nature of their actions. *See United States ex rel. Phipps v. Follette, supra,* 428 F.2d at 915. He also remembered their dark wavy hair. He watched them pass by the construction project and stop at a corner about 150 feet distant where they remained about one minute. The weather was clear on April 19, and the robbery took place in broad daylight. None of the men wore masks or other facial disguises. Both Alder and Rees made their identifications within three days after the crime, a period well within the time allowances recognized in this circuit. *See United States ex rel. Rutherford v. Deegan, supra,* 406 F.2d at 220 (10 days); *United States ex rel. Bisordi v. LaVallee,* 461 F.2d 1020, 1024 (2d Cir. 1972) (9 days). Finally, at trial both of the witnesses were cross-examined at length as to the certainty of their identifications, thereby considerably reducing the measure of possibility that Pella's conviction was based on misidentification. *See Simmons v. United States, supra; United States ex rel. Bisordi v. LaVallee, supra,* at 1026.

As to petitioner's final contention that he was denied the opportunity to cross-examine Mrs. Cingarelli at trial, we are convinced that no such refusal took place, and we are in agreement with Judge Foley's findings on the question. Petitioner has neither raised nor briefed this issue on appeal, and finding no error in the District Court's judgment, we

---

4. We also find both *United States ex rel. Gonzalez v. Zelker, supra,* and *United States ex rel. Rivera v. McKendrick,* 448 F.2d 30 (2d Cir. 1971), *cert. denied,* 404 U.S. 1025, 92 S.Ct. 678, 30 L.Ed.2d 675 (1972), to be distinguishable on their facts. In the former case, only two photographs were shown to the identifying witness and they were of the two defendants charged with the robbery. In the latter, the witness was shown a single photograph, presumably of defendant, and instead of making an identification, he inquired of the police officer, "Is this the man?"

5. Nor any "substantial likelihood of irreparable mistaken identification," 388 U.S. at 302, 87 S.Ct. 1967.

think the issue merits no further attention.

For the reasons here stated, we affirm the denial of the writ and the dismissal of the petition.

Affirmed.

OAKES, Circuit Judge (concurring):

I concur in the result. I cannot agree with the proposition that Alder's in-court identification was free of taint from an unnecessarily suggestive photographic display or derived from an independent source, a matter as to which the State had the burden of proof "by clear and convincing evidence." *United States v. Wade,* 388 U.S. 218, 240, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). I concur, however, in the light of Rees's in-court identification, not tainted as Judge Waterman's opinion so well demonstrates, on the ground that any error in the receipt of Alder's testimony was harmless. *United States v. Madison,* 458 F.2d 974 (2d Cir. 1972). *See also Brathwaite v. Manson,* 527 F.2d 363, at 367 (2d Cir. 1975).