**UNITED STATES of America, Plaintiff,**

v.

**Enrique RODRIGUEZ et al.**

**Nos. Cr. 142–72, 143–72, 116–72, 118–72, 119–72 and 123–72.**

United States District Court, D. Puerto Rico.

June 4, 1973.

Jose Hamid Rivera, San Juan, P. R., for plaintiff.

Jose A. Quiles, Asst. U. S. Atty., San Juan, P. R., for defendants.

### ORDER

CANCIO, Chief Judge.

On March 3, 1972 during an arraignment in the case of United States v. Miguel González Vargas, before visiting Judge Ted Dalton, a certain altercation arose which gave rise to the present cases before us. The proceedings before Judge Dalton involved charges against Mr. Miguel González Vargas, for alleged violations of the Selective Service Act. When the accused attempted to address himself to the Court, the presiding judge, for reasons which are not relevant here, ordered that he cease doing so. This in turn caused some reaction from an unusual amount of spectators present in the courtroom on that day which gave rise to a general commotion. During the melee, the alleged assaults object of the present indictments [1] occurred.

---

1. These cases involve various counts of assault by "striking, beating or wounding," pursuant to 18 U.S.C. Section 113 (d) in the following cases: Criminal cases 147–72, 143–72, 116–72, 118–72, 119–72, 123–72.

We are faced with a motion for suppression of evidence filed in each case. Since all motions are identical in each case and deal with the alleged illegality of the same preindictment lineup, they have been consolidated for decision here. The defendants contend that the identification evidence of certain witnesses who participated in a lineup held on March 3, 1972 should be suppressed because the identifications obtained during the lineup were tainted by the allegedly irregular and suggestive manner in which the lineup was held. An evidentiary hearing was held on February 6, 1973, during which the Court heard the testimony of several defense witnesses, one of the defendants, one of the defense attorneys present during the lineup, and the United States Attorney, who directed the lineup.

On March 3, 1972, after the altercation in Judge Dalton's courtroom occurred, twenty-nine (29) persons [2] were arrested and detained by the Government during the incident which occurred at approximately 10:30 a. m. The lineup in question occurred sometime between the moment of the mentioned arrests and 2:00 p. m. of the same day; that is, no more than 3½ hours after the incidents which produced the arrests.

The Government, allegedly fearing that of the 29 persons arrested during the general commotion, many were not actually involved in the alleged aggressions complained of in the subsequent indictments, decided to carry out a lineup in order to precisely determine the identity of the alleged assaulters and set free the rest of the persons detained.

The manner in which the lineup was carried out, even in view of the need for prompt action, considering the possibility of the arrest of innocent persons, was certainly not an example of the correct procedure. The suspects were made to enter in groups of four into a room and there asked to stand against a wall and identify themselves when requested to by the United States Attorney. Counsel for the defendants was present at all times [3] during the lineup, but the record does not reveal that he ever objected to the lineup at that time.

■■ The record is conflicting as to whether several law enforcement officers dressed in civilian clothes, who joined each group of suspects (a different officer for each group), joined each group before it entered the room where the lineup was being carried out or joined it from the group of law enforcement agents already in the room. One of the defendants' witnesses [4] testified that the officer in his group joined before entering the lineup room.[5] This was the position maintained by the United States Attorney on the witness stand, but which was contradicted by one of the defendants, Mr. Alván Colón Lespier, and by attorney José Hamid Rivera, who was present during the lineup. The question of which version was correct must be decided in the defendants' favor and the Court lends credibility to it. This is so, specially in view of the fact that the United States Attorney recognized the possibility that the law enforcement agents who were the subject of the alleged assaults and who were identifying the true suspects as witnesses in the room, may have recognized the agents who participated in the lineup as fellow law enforcement officers instead of suspects.[6] For all practical purposes, therefore, the only persons involved in the lineup to be identified were the suspects arrested during the general commotion.

2. Defendant's Exhibit A.

3. The Supreme Court has held that presence of counsel is not required in preindictment lineups. Kirby v. State of Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).

4. Mr. Enrique Arroyo García.

5. The parties had stipulated that the lineups utilized were identical for each defendant.

6. "The Court: Did the law enforcement officers know each other?
A: I gather they did. I don't know. I gather they would know each other, yes sir."

While it is generally recognized that policemen should not be used in a lineup since they have a distinctive bearing, might glance at the suspect because they know his identity and might cause the suspect to become obviously nervous,[7] there is nothing in the record to indicate that such participation added suggestiveness to the lineup proceedings.

The lineup was conducted before a group of approximately twenty (20) law enforcement agents, several of whom were either victims or eye witnesses of the alleged assaults. These persons were allowed to mingle together, and though the record is contradictory on whether there was generally a quiet atmosphere in the room or not, we conclude as a question of fact that communication between the persons present in the room was possible. Again this was not the best practice. If there is more than one witness, they should be kept segregated from each other and should not be allowed to converse with one another.[8] But, again, this is simply one of the factors we must consider in order to determine whether or not the totality of the circumstances indicate to the Court that the lineup was so suggestive as to single out any of the defendants over the other suspects.

It has been suggested by the defendants that the participants in each lineup were of such dissimilar physical characteristics that identification of each defendant was inevitable. It is the Court's opinion that the defendants have not carried the burden of establishing this. In the photograph accepted in evidence as Defendant's Exhibit I, there appears Group 5 of the suspects who participated in the lineup. One of these was defendant Alván Colón Lespier, the only defendant who testified during the evidentiary hearing. In his group, judging from Defendant's Exhibit I, the Court does not find any substantial differences between the participants who appear in the photograph as far as physical characteristics are concerned. All are of more or less the same height and complexion, and in truth are not so dissimilar in appearance as to set apart Mr. Alván Colón Lespier from the rest of the group.

Of the 29 persons who participated in the lineup, only six were finally identified and indicted. All of the participants in the lineup were suspects with the exception of the abovementioned law enforcement officers who were easily distinguishable as such by the other agents doing the identifying. When a defendant appears in a lineup with other suspects in the same crime, this fact has been held not to be so unfair as to require exclusion of the evidence of defendant's identification.[9] But, truthfully we must admit it is not the best practice, and together with other circumstances may lead a court to understand that a violation of due process may be inherent in a contested lineup.

The record is clear that the defendants cannot point to any specific fact or circumstance which would tend to establish the element of suggestiveness with respect to any of the defendants. At one point during the hearing, the Court addressed the defendant Alván Colón Lespier, as follows:

"The Court: Did he insinuate that you were different from the rest or did he treat the group all the same?

A.—Well, I don't know. I don't know."

A similar exchange took place with the defendant's counsel, Mr. José Hamid Rivera:

"The Court: How were they pointed out? For example I noticed this morning some of the people who were suspects testified here and

---

7. See: 39 A.L.R.3d 487, 493; 20 Am.Jur. Proof of Facts 539.

8. Thompson v. State, 438 P.2d 287 (1968), Okl.Cr.; 39 A.L.R.3d 487, 493; 20 Am.

Jur. Proof of Facts, Eyewitness Indentification Sec. 9.

9. 39 A.L.R.3d 497, Section 7.

they are not among the defendants. They went to the lineup and were not chosen, was anyone suggesting to the people who were identifying that they should identify this as participating and that as not participating?

A.—No, no. The specific point that this one be chosen and the other not, no."

In Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) the Supreme Court set down the rule of law by which to measure pre-trial identification procedures. The Court held that if the defendant could establish that "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification" then he could maintain that he was denied due process of law. The primary evil to be avoided is "a very substantial likelihood of irreparable misidentification." Neil v. Biggers, 409 U.S. 188, at 197, 93 S.Ct. 375, at 381, 34 L.Ed.2d 401 (1972). This must be held considering the totality of the circumstances in which the identification was obtained.

In Stovall, supra, the Supreme Court upheld the showing of a single suspect in a hospital room to an injured witness. The suspect was the only negro in the room and was handcuffed to one of five police officers who brought him to the hospital room. The fear that the main witness could die at any moment was understood to be sufficient reason to permit the immediate hospital room confrontation, instead of the usual police station lineup. The court in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), expanded this "special circumstances" type of exception to the use of single photographs for identification. The court found that the need for swift identification by the FBI in order to apprehend the suspect, together with the fact that each witness

was alone when he or she saw the photographs and that the FBI agents in no way suggested which persons in the pictures were under suspicion, justified the use of an identification procedure which the court stated "may have in some respects fallen short of the ideal." 390 U.S., at p. 386, 88 S.Ct., at p. 972. Such compelling and extraordinary circumstances are present here. The evidence indicates that a general commotion or melee broke out in the courtroom which resulted in the arrest of 29 persons, of which there was a strong indication that most were not actually involved in the aggressions complained of in the subsequent indictments. The need for fast action on the part of the Government to determine precisely which were the true culprits justified a lineup procedure, which, in some respects, may have "fallen short of the ideal."

Considering the totality of the circumstances involved here, we cannot conclude as a question of fact that the lineup was so suggestive as to be conducive to misidentification. All of the identifiers were law enforcement officers and could be expected to be more apt in identifying suspects than mere laymen. The lineup was carried out not more than 3½ hours after the incident in the courtroom. We are not involved with a one suspect showup or confrontation, but with lineups composed of four or five suspects and one law enforcement officer. We cannot conclude that there was suggestiveness in the reduced number of participants in the lineup, since in fact the number was not at all reduced, but sufficient. There is no evidence that the participants were of such dissimilar physical characteristics as to justify a conclusion of suggestiveness. On the contrary, the evidence tends to establish the opposite conclusion.[10]

All this, added to the fact that no irregularity was pointed out which would

---

10. See Defendant's Exhibits F, G, H, I, J, which are photographs of Groups 2, 3, 4, 5 and 6 which participated in the lineups.

tend to set apart or suggest any particular suspect during the lineup, and that each suspect was treated in substantially the same manner, compels us to conclude that the lineups were not suggestive. While we frown upon the practice of not segregating or placing apart each witness and permitting them to mingle together in the same room while the identifications are taking place,[11] and of the practice of including only suspects for the same crime in the same lineup group, we cannot conclude that these factors lent any suggestiveness to the identifications.

In the only case in which the Supreme Court has declared a lineup to constitute a denial of due process, Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), the facts clearly demonstrated suggestibility. In the first lineup arranged by the police in that case, the petitioner was the only six-footer in a group composed of persons who measured no more than five feet six inches. He was the only one wearing a leather jacket similar to the one worn by the robber. When this did not lead to a positive identification, the police permitted a one-to-one confrontation between the petitioner and the witness. When this identification proved only tentative, another lineup was arranged in which the petitioner was the only person in the lineup who had also participated in the first one. The court determined that the suggestive elements in the identification procedure made it all but inevitable that the petitioner would be finally identified. The facts of the present case do not even remotely approximate the severity of the circumstances present in *Foster*.

We, therefore, conclude that the lineup held on March 3, 1972, and during which the identifications which sustain the present indictments were obtained, was not unnecessarily suggestive nor conducive to irreparable misidentification, and the defendants' motions to suppress evidence in all cases are hereby denied. It is so ordered.

but added to the extreme situation of a single suspect cell block confrontation.

11. See Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968), at p. 1241, where this factor was present,