**UNITED STATES of America, Appellee,**

v.

**Alvan Colon LESPIER et al.,
Defendants, Appellants.**

No. 75–1479.

United States Court of Appeals,
First Circuit.

Argued Feb. 8, 1977.

Decided June 24, 1977.

Michael D. Ratner, New York City, with whom Margaret L. Ratner, New York City, was on brief, for appellants.

Mervyn Hamburg, Atty., Dept. of Justice, Washington, D. C., with whom Julio Morales Sanchez, U. S. Atty., San Juan, P. R., and Sidney M. Glazer, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, VAN OOSTERHOUT * and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

On March 3, 1972 the federal trial of a selective service case in Puerto Rico was interrupted by noise from sympathizers of the defendant who were in the courtroom. As the courtroom was being cleared, several assaults on deputy marshals occurred. As the result of a lineup of some 29 persons, held several hours after the incident, criminal proceedings for assault were commenced against six persons, five of whom are the appellants in this case.[1] Three were indicted for the felony of assaulting a deputy marshal, in violation of 18 U.S.C. §§ 111, 1114, and two were charged by information with the misdemeanor of committing an assault within a building, i. e., a post office and courthouse, within the special territorial jurisdiction of the United States, in violation of 18 U.S.C. § 113(d). The issues raised on appeal are whether an in-court identification of the defendants was tainted by an impermissibly suggestive lineup, whether the prosecutor's summation exceeded the

---

* Of the Eighth Circuit, sitting by designation.

1. The opinion of the district court, holding that the lineup was not impermissibly suggestive, is published as *United States v. Rodriquez et al.,* 363 F.Supp. 499 (D.P.R.1973).

bounds of propriety, whether the court's instructions on reasonable doubt were plain error, and whether defendants were deprived of the assistance of adequate legal counsel. Because this last issue is dispositive and raises questions of fundamental importance to the conduct of the bar, the conduct of parties to litigation, and the powers and responsibilities of trial judges, we shall concentrate on it.

In April, 1975, after three years of pre-trial motions, conferences, and continuances, the trial date was set for September 8, 1975. Appellants' original counsel of record, Jose Hamid Rivera, had withdrawn in November, 1974; new counsel, Juan Mari Bras, filed his appearance on December 5, 1974. Although not listed on the docket as counsel for appellants, Pedro J. Varela had been active in much if not most of the pre-trial proceedings. On September 2, 1975, three week days before trial, a motion for postponement of trial by Mari Bras was received in the office of the court's clerk.[2] The motion simply recited that Mari Bras, being one of the "orators" at an International Solidarity Conference for Independence of Puerto Rico to be held in Cuba from September 4 to September 15, deemed it "physically impossible . . . to appear . . . on the date set for the trial." The government objected, noting that the trial had already been continued several times at the request of defendants' attorneys. The court denied the motion on September 5, observing that the trial date had been set at a status conference on April 17, that at no time had Mari Bras given the court information about a conflict in his schedule, that his actual participation in the case had been minimal, and that "other appearing counsel" (Varela) had attended to substantially all motions and appearances, was "still an attorney of record", and was fully competent to represent defendants.

According to Varela, addressing the court at the opening of the trial proceedings on September 8, defendants had been trying for a week or more to obtain additional counsel from New York. One lawyer had been engaged but had to decline during the week before trial was to begin. Another, contacted on Saturday, September 6, said he would come but needed time for preparation. A third actually came on Sunday, September 7, but would not participate unless he had time for preparation. As for Varela himself, although a lawyer of some years experience and head of Puerto Rico Legal Services, he said that he had never participated in a criminal trial, and professed not to know how to impanel a jury or give adequate representation to appellants. He also noted that since the trial of a sixth defendant would have to be postponed because of medical reasons, this was an added reason for continuance.

The Assistant United States Attorney pointed out that this was the third time he had prepared for trial, that Varela had appeared as counsel of record in the 1973 suppression hearing, that the transcript of that hearing revealed his competence, and that he—the Assistant U. S. Attorney—was leaving the office soon. The court noted that its prior dealings with Varela led it to believe he was competent and fully able to handle this case, involving relatively simple questions of fact and law, and that Varela had been the only attorney appearing for defendants on pretrial motions and at the conference when the trial date was set. The court referred to its warning a week earlier that the defendants' efforts to secure the additional attorneys would not be grounds for a continuance.

The voir dire of jurors commenced, Varela saying that he had not prepared and did not know of any questions which should be asked. The court then inquired if the two misdemeanor defendants wished to submit their case to the judge or jury, although they were not entitled as a matter of right to a jury trial. Varela first said, "I don't

---

**2.** It bore the date of August 26, a full week before the date of receipt. The United States Attorney's motion in opposition was dated and filed in the clerk's office on September 5.

There is no explanation for the delay between the date of execution of the motion and the date of receipt.

know what is the effect of having it go to the Jury or having you decide it", but then did, at the request of the court, explain the issue to defendants. He reported that defendants wished to speak directly to the court. The court then said that if defendants did not wish to express themselves through counsel on this issue, it would assume that they did not wish a jury. The court's voir dire having been completed, each side had its opportunity to exercise its preemptory challenges. Varela again said he did not know what to do, that he did not "know what are the reasons or the causes". Even after the court stated that reasons need not be given, Varela said, "In all honesty, I wouldn't be able to."

After the jury was impanelled, and the court gave some general instructions, the jury left the courtroom and one of the defendants, Reinaldo Torres Gonzalez, was allowed to address the court through an interpreter. He said that "one of the main Attorneys in the case was absent from Puerto Rico for weighty reasons", that Varela was part of "a team of Attorneys" but that Varela had said that he was "not in professional condition" and had no experience in criminal cases. He requested a postponement to allow the participation of "one of the Attorneys of record" and others retained from the United States, to guarantee adequate legal assistance. The court inquired if Torres Gonzalez knew the case had been set for trial since April; he said "No", that defendants had found out two weeks ago through the former secretary of their former attorney, Hamid Rivera. The court noted that the record showed that defendants were notified of the trial date in April, to which Torres Gonzalez replied that he did not remember.

Varlea attempted to explain the "confusion" by saying that he had attended the April conference at the request of Hamid Rivera's former secretary, that he did so and merely reported back to her, and that he learned of the imminence of trial two or three weeks ago from defendants. He ad-

mitted to the court that he had known of the trial date in April, and subsequently from a magistrate's order, from a procedural conference in chambers, and from the denial of the motion of continuance on September 5. He added that he had assumed that he would be working under a New York lawyer.

After a recess the court formally denied the motions for continuance made by both Varela and his client Torres Gonzalez, reciting the prior continuances, the level of Varela's ability ("very competent"), his position as the head of Puerto Rico Legal Services, the straightforward nature of the case, and the long standing notices of the trial date which had been given to both the lawyers and the defendants. Once again defendants addressed the court through Torres Gonzalez, first indecisively on the issue of waiving a jury trial, and then on the possible interpretation of the court's remarks that defendants were trying to delay the proceedings, saying, "this is not our intention to play or to manipulate this case, Your Honor." The court replied, "I haven't interpreted it that way." Other discussion ensued, irrelevant to this appeal; the jury was called and the trial began.

Varela said he could not make an opening statement to the jury. Two deputy marshals and two General Services Administration policemen testified briefly about being assaulted by one or more of the defendants.[3] Varela interposed no objections, engaged in no cross-examination, presented no witnesses or non-testimonial evidence, made no argument to the jury, and took no exceptions to the instructions. The jury deliberated a little under two hours and returned verdicts of guilty.

■ Our narration of these proceedings reveals conduct of counsel which merits memorialization only as an example of what the bar must avoid if courts are to function. The conduct of Mari Bras was no less than either (1) the unrealistic if not contemptuous expectancy that the court, despite elaborate advance scheduling of a trial, would

---

**3.** There was, however, no testimony that defendant Lespier assaulted Deputy Marshal Ro-

cafort, the subject of one count of the indictment against him.

at the last moment subordinate the interests of all others to the personal plans of a lawyer who had not taken the smallest step of giving notice earlier, or (2) the willingness to abandon his clients, forcing them to retain trial counsel at the eleventh hour when a serious trial and the real possibility of lengthy imprisonment impended. At the least, this disregard of court and clients would seem to fly in the face of both the Code of Professional Conduct and the Standards Relating to the Defense Function of the American Bar Association.[4] A standard of values which places an attorney's private political activities above his responsibilities to the court and to his own clients—even if they approve—is fundamentally incompatible with the premises underlying the adversary system.

■ This type of conduct would have been clearly punishable as criminal contempt under 18 U.S.C. § 401(3). *United States v. Marx*, 553 F.2d 874 (4th Cir. 1977). Sanctions available to the court include the imposition of a fine and suspension from practice before the court. We note also a recent decision of the Second Circuit affirming the assessment, pursuant to local rule, of reasonable costs for each day of delay recklessly caused by counsel. *In re Sutter*, 543 F.2d 1030 (2d Cir. 1976). *See also* ABA Standards Relating to the Function of the Trial Judge, Approved Draft, 1972, 6.5, pp. 82–84.

■ Merely punishing the delinquent attorney does not solve the problem for the court whose calendar has been disrupted. Where, as here, the trial had been delayed several times at appellants' request and the government attorney offered sound reasons for opposing further delay, the court was well within its discretion in requiring the trial to go forward without Mari Bras. "Blending an appreciation of the inevitable difficulties of trial administration with a concern for constitutional protections, the cases uniformly hold that the right of an accused to choose his own counsel cannot be insisted upon in a manner that will obstruct reasonable and orderly court procedure." *United States v. Poulack*, 556 F.2d 83, 86 (1st Cir. 1977).

■ While Varela had not been retained as lead counsel, he had been representing appellants in pretrial matters and was an appropriate choice to fill the gap left by Mari Bras' unceremonious departure. The court's finding that Varela had the competence and experience to perform effectively in this case was adequately supported. If not even the simplest criminal case could constitutionally be tried by a member of the bar who had not previously tried such a case, replenishing the trial bar would be almost impossible. But Varela was even more experienced than a recent law graduate or new member of the bar. He had not only been a lawyer for some years but held the responsible post of director of Puerto Rico Legal Services, a supplier of legal assistance in a wide variety of complex litigation, which had necessarily involved the ex-

---

4. Canon 5. "A lawyer should exercise independent professional judgment on behalf of a client."

Ethical Consideration E C 5–1: "The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromises and loyalties [footnote omitted]. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client." American Bar Association Code of Professional Responsibility, as amended August 1976, p. 24C.

Canon 6. "A lawyer should represent a client competently."

Ethical Consideration E C 6–1: "Because of his vital role in the legal process, a lawyer should act with competence and proper care in representing clients." *Id.* at 30C.

Standard relating to the defense function: "1.2: Delays: punctuality.

(a) Defense counsel should avoid unnecessary delay in the disposition of cases . . . . .

(c) It is unprofessional conduct for defense counsel intentionally to use procedural devices for delay for which there is no legitimate basis.

(d) A lawyer should not accept more employment than he can discharge within the . . . limits of his capacity to give each client effective representation. . . . ." American Bar Association Standards Relating to the Prosecution Function and the Defense Function, Approved Draft, 1971 pp. 178–79.

amination of witnesses and conduct in a trial setting. Moreover, Varela had been the chief if not the sole spokesman for defendants in all the pretrial motions, hearings, and conferences, and had prepared defendants' requested instructions. In the suppression hearing he had cross-examined extensively.

■ Once the court had ruled that the trial should proceed, neither Varela nor appellants were justified in refusing to go forward. Appellants' options were to utilize Varela's services, to which they were entitled or, after proper warnings and explanations by the court, to proceed pro se. *See Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Varela, if he remained as counsel, was obliged to put forward his best efforts notwithstanding his personal reservations. If he believed that the court had abused its discretion in denying a continuance until Mari Bras returned, the proper course was to preserve an objection for appeal. *See United States v. Poulack, supra*, 556 F.2d at 85. But Varela's conduct, stripped of its surface civility, was a calculated tactic to turn the trial into a charade. His persistent refusal to undertake the most ordinary tasks of advocacy would seem to have violated the responsibilities borne by attorneys as officers of the court. Standard 7.1 of the ABA Standards Relating to the Defense Function, Approved Draft, 1971, p. 257, states in relevant part:

> "(c) It is unprofessional conduct for a lawyer to engage in behavior or tactics purposefully calculated to irritate or annoy the court . . . . .
>
> (d) The lawyer should comply promptly with all orders and directives of the court, but he has a duty to have the record reflect adverse rulings or judicial conduct which he considers prejudicial to his client's legitimate interests."

Such a formulation gives full weight to the duty of representing the interests of a client without assaulting the processes of orderly litigation on which the rights of all clients ultimately rest. There is no doubt that the trial judge had the power, *see* ABA Standards Relating to the Function of the Trial Judge, *supra*, at p. 82, to "require attorneys to respect their obligation as officers of the court and enable the trial to proceed with dignity." Sanctions available to the court include censure, citation for contempt, suspension for a limited time of the right to practice in the court, and informing appropriate disciplinary bodies of the nature of the misconduct. *Id.*

As to the appellants themselves, while it was no violation of their constitutional rights to require them to go to trial with competent alternative counsel, *see United States v. Poulack, supra*, the difficulty we face is that Varela's improper conduct left appellants without even the pretense of a competent defense. We must therefore decide whether, despite circumstances that strongly suggest their complicity in counsel's misconduct, appellants' Sixth Amendment rights have been violated.

■ The appellants were subject to a duty to treat the court processes seriously. *Illinois v. Allen*, 397 U.S. 337, 346–47, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). In addition, we long ago made it clear that an accused cannot easily disassociate himself from the tactics of his trial counsel. In *Cruzado v. People of Puerto Rico*, 210 F.2d 789, 791 (1st Cir. 1954), Chief Judge Magruder wrote for the court: "If the accused, being present, manifests no dissent, it is usually fair to assume that he approves of, or at least acquiesces in, the decisions taken in open court in his behalf by his counsel." *See also Stegall v. United States*, 153 F.Supp. 844, 847 (W.D.Ky.1957), *aff'd* 259 F.2d 83 (6th Cir. 1958). The application of this rule here is, however, somewhat blunted by the fact that appellants had not chosen Varela as trial counsel, and steadfastly maintained that they had no confidence in him. The question remains whether this disavowal was merely part of a plan to subvert any trial conducted without Mari Bras.

■ Other indications as to appellants' voluntary and knowing participation in the conduct of their attorneys are, unfortunately, also ambiguous. According to the court,

they had received, in April, notice of the trial date; they endorsed the last minute exit of their lead counsel for reasons they deemed "weighty"; they accepted uncritically the protestations of incompetence by Varela and did not, the government argues, ask the court to instruct him to take an active role in their behalf. On the other hand, they, through Torres Gonzalez, said that they had not known of the planned absence of their chief attorney until about two weeks before trial—which would date their knowledge at about the time Mari Bras signed his motion for continuance; and they had promptly endeavored to obtain the services of three New York attorneys (for some reason making no effort to seek counsel from the Puerto Rico bar).

Since a finding that appellants acquiesced and participated in Varela's conduct would really be a finding of a waiver of counsel, the stringent standards applicable to waiver apply. *See generally, Maynard v. Meachum,* 545 F.2d 273 (1st Cir. 1976). In this variant of waiver founded on connivance, there must be evidence of a shared manipulative purpose to make a mockery of the court processes. We do not say that on this record the court could not have made a supportable finding of voluntary acquiescence and participation in the attorney's conduct. Much would depend on the court's view of the credibility of the defendants' explanations, taking into account defendants' demeanor.

· But the court did not make such a finding. Indeed at one point the court seemed to make the contrary finding when, in response to Torres Gonzalez' assertion that appellants' intention had not been "to play or to manipulate this case", it said, "I haven't interpreted it that way." In the absence of either a clear declaration of waiver by defendants or an express finding of waiver by the district court, we reluctantly hold that appellants cannot be held on this record, as a matter of law, to have knowingly and voluntarily acquiesced in the conduct of their counsel. We say "reluctantly" because of the unpardonable conduct of the two attorneys, the dilemma in which that conduct had placed the trial

court, the conscientious efforts of that court to deal with the situation without invoking the stern sanctions available to it, and the distinct possibility that appellants themselves, despite their disclaimer and its courteous acceptance by the court, were knowing participants in this subversion of court processes. We must therefore remand for a new trial, since it is clear that Varela's representation fell below any standard of competent representation.

■ The unhappy possibility that there may be a repetition of these events leads us to offer some general guidance to district courts that may be confronted with such a difficult situation in the future. While we appreciate the court's desire in the present case to be courteous and its disinclination to doubt the sincerity of a respected member of the bar, our uncertainty and the consequent need for a new trial of this case could have been avoided if the trial court had taken a firmer hand both with counsel and with the defendants themselves. To remove any doubt as to the defendants' wishes and intentions, we think it is advisable in all cases presenting an issue of waiver by conduct for the court to address the defendants directly, explain the choices available to them, warn them of the consequences, and, if possible, obtain a clear answer on the record as to the course they wish to pursue. *Cf. Faretta v. California, supra,* 422 U.S. at 835, 95 S.Ct. 2525. For example, in a case like the one before us, the court could formally instruct the defendants that the available counsel is capable of conducting a competent defense, that they may either direct him to participate actively in the trial or waive their right to counsel, and that continued non-participation by the attorney with their approval will be deemed a waiver of counsel. The court should simultaneously advise the attorney that while he is fully entitled to preserve all objections on the record, he is obliged to go forward and use his best efforts to defend the case, or else face contempt. If, after opportunity for consultation between attorney and client, counsel persisted in his refusal to participate, it

would be for the court to determine as a question of fact whether the decision was the attorney's or the client's. With a colloquy such as we have outlined on the record, we think a finding of waiver of counsel would be amply supported even if defendants persisted in their claimed belief as to the attorney's incompetence. *Cf. Illinois v. Allen, supra,* 397 U.S. at 343, 90 S.Ct. 1057.

 Since a new trial of this case may take place, the issue of the adequacy of the lineup should be resolved.[5] We have considered the careful analysis of the district court in *United States v. Rodriquez et al.,* 363 F.Supp. 499 (D.P.R.1973), and find no error in its conclusion that the lineup "was not unnecessarily suggestive [or] conducive to irreparable misidentification". 363 F.Supp. at 503. The court credited defendants' testimony that each group of four suspects was joined by an officer under conditions where the latter was easily recognized by fellow agents. And it found that communication among witnesses to the lineup was possible. But it also found that there was no attempt to suggest that one suspect be chosen rather than another and that the suspects, grouped in sufficient numbers, were not shown to have been so dissimilar in appearance that identification of defendants was inevitable. The court held that the arrest of 29 persons following the melee and the need to take prompt action to identify those responsible justified resort to procedures which were less than ideal. It also took into consideration the short lapse of time—3½ hours—between the incident and the lineup. We affirm the district court's ruling that the lineup was not unnecessarily suggestive considering the totality of the circumstances or conducive to irreparable mistaken identification. *See Neil v. Biggers,* 409 U.S. 188, 196, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

We would urge that, in the event of a new trial, particular efforts be made by the prosecution to avoid any substantial issue

arising out of its closing argument and that the court, in addressing the issue of reasonable doubt in its instructions, be punctilious in adhering to language which has passed the test of appellate decisions.

*The judgments are vacated and the causes remanded for further proceedings in accordance with this opinion.*

---

5. Appellants seek on appeal to raise the issue of lack of probable cause to arrest. Since this was not raised below, we do not consider it here, there being no indication that the pro-

ceedings were infused with such unfairness as to result in manifest injustice. *See United States v. Diaz,* 427 F.2d 636, 637 (1st Cir. 1970).