**In re the Matter of Steven JACKSON, Esq.**

**This contempt proceeding arose in the following case: United States of America v. Jonathan Scott Baldwin, et al.**

**No. 83–6046–Cr.**

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

April 17, 1984.
Supplemental Order Aug. 13, 1984.

Stanley Marcus, U.S. Atty., Stephen Le-Clair, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Bruce Rogow, Fort Lauderdale, Fla., for defendants.

### CERTIFICATE OF CONTEMPT

ROETTGER, District Judge.

1. This case involves 9 defendants being tried on a 35-count indictment. The best estimate of trial time is at least three and probably four weeks. A jury panel of 55 jurors was assembled for jury selection inasmuch as the Court had given extra peremptory challenges to the defendants because of their number.

2. The case was set for trial after a calendar call with the lawyers present on Monday, February 27, 1984, seven full weeks prior to the commencement of the trial. At that calendar call on February 27th, the trial date selected was April 16th.

3. The significant portions of the reporter's notes at that calendar call which pertain to the scheduling of the trial in connection with the attendance of Steven Jackson, Esq., attorney for Howard Avery Jones, is set forth hereafter:

JUDGE: Anybody have any problem with trying the case in April or May? * *

Have you got any pre-planned or pre-paid vacations? * * * *
If a lawyer does, you better speak now or you are going to have to explain it to your wife. If you have a pre-planned or pre-paid deposit or something, let me know because I don't want to interfere with your vacation. * * * *

JACKSON: I don't have any vacation planned, but I do have a trial in New York on the 1st week of April. After that, I have no objections to any of the time in those 2 months. * * * *

JUDGE: 16th of April, we will begin this case at 9:30 on Monday.

4. No written motion for continuance, motion for stay, or suggestion of difficulty of Mr. Jackson with the Court's announced scheduling of this trial was presented to the Court until the morning of the trial on April 16th.

5. On the Thursday before the Monday trial date, April 12, 1984, Attorney Jackson's brother attended calendar call for him and orally advised the Court his brother was ready for trial but wanted four days off for Passover. The Court was startled and advised he'd never had such a request from a lawyer or juror, but always recessed early enough specifically to accommodate the ones celebrating Passover or Holy Days.

6. About 9:40 on Monday, April 16, 1984, the trial was called and all of defendants' counsel, including the local counsel for four out-of-state attorneys, were present as well as the Assistant U.S. Attorney and the government agent. The trial had to be started a few minutes late because the marshals had been transporting two defendants who were in custody.

7. Attorney Alvin Entin, co-counsel for defendant Baldwin, requested a recess at 4 o'clock so that he could get to a dinner and celebrate Passover with his family. The Court granted Mr. Entin's request with an observation that it was always the Court's practice to recess a little early so that jurors desiring to do so could attend the dinner and services in connection with Passover.

8. A flurry of last-minute motions were presented by various counsel.

9. When Mr. Jackson presented his motion, the Court was advised in writing and with specificity that Mr. Jackson was seeking a stay of proceedings, not simply to leave early to celebrate the beginning of Passover but was seeking a stay of this trial on Tuesday and Wednesday, April 17th and 18th, as well as Monday and Tuesday of the scheduled 2nd week of the trial, April 23rd and 24th, for the entire days.

10. Steven Jackson, Esq., described this as a practice he always faithfully observed and requested the stay on that basis. The Court does not doubt his representation, but is curious as to why he was unaware of the date of Passover until this late date.

11. At the close of considerable colloquy between Court and counsel about the matter, the Court, having noted the fact that a request for so much time off for Passover had never been presented to the Court during his nearly 12 years on the Bench, and that the Court does not close for any portion of Good Friday, either on the date set by the Eastern rites or the one observed by Roman Catholics and Protestants (in 1984, as apparently occurs every four years, the dates are the same). The Court also observed it does not close for Ramadan or any of the holy days of the Islam faith, but has always attempted to keep the calendar clear on Yom Kippur for attorneys or jurors who happen to be members of the Jewish faith.

12. The undersigned judge is a member of the Presbyterian Church and attends Good Friday service during his lunch hour.

13. The Court denied the motion for stay because of the late filing of the motion in a nine defendant, four-week trial, especially with this Court's and district's heavy trial calendar.

14. Attorney Jackson remained at the lectern and announced that: "I just want to inform the Court that, with due deference to your ruling, I'll not be here tomorrow and Wednesday, or Monday and Tuesday of next week. Thank you." The Court responded: "With due deference to you, sir, I will consider whether or not to send a marshal to bring you."

15. The Court pursued various attempts to provide an alternative for Attorney Jackson while achieving adequate representation of his client. After the lunch recess, when the matter was reconvened at 12:40, the Court inquired of defendant Jones if he would be willing to have another attorney represent his interest during the period that Mr. Jackson wished to be gone. He

replied that he would but the Court urged him to discuss the matter with his lawyer. After Attorney Jackson conferred with defendant Jones, Attorney Jackson announced that it would not be satisfactory to have someone else cover for him to represent defendant Jones during this period.

16. Around 4 o'clock the Court recessed so that the lawyers or jurors who wished to do so could attend to the preparations for the beginning of Passover. At that time the Court inquired of Mr. Jones if he had been able to make any progress in this matter and he advised that he had not but that perhaps he could by morning. Attorney Jackson again advised the Court as follows:

JUDGE: I most assuredly will consider your action in direct defiance of a court order if you are not....

JACKSON: With all due respect, I answer to a higher authority than this Court in this matter and I will not be here tomorrow.

JUDGE: Well, you act at your peril.

The Court then recessed the trial for the day.

17. At 9:30 o'clock on the next day, Tuesday, April 17, trial was to resume with a continuation of the jury selection process but Attorney Steven Jackson was absent, in continuing defiance of the Court's order.

18. On Tuesday morning Mr. Jones wished to address the Court and appeared very wan and a bit frightened. He wanted to proceed with the trial and have a lawyer, and his exact statements were as follows: "Your Honor, I am embarrassed about what happened yesterday. My attorney, Mr. Jackson, did not confer with me on the motion he made about this holy day. I had no idea what he was doing. I am real anxious to get this over with and go on with my trial. I don't know too much about the law, but I realize my life is at stake and I am worried and I am scared.... I don't have any money and can't afford to get another one [attorney] and at this late hour most don't want to get involved. I need another attorney. I would like to get another attorney. I am willing to do whatever the Court suggests. I am in your hands, Your Honor."

19. The Court, with the invaluable help of U.S. Magistrate Kyle, obtained the services of a local lawyer, Jeffrey Miller, Esq., who agreed to step in and help out. The Court notes that all other counsel were extremely helpful in assisting the Court with the situation.

20. The Court further notes that the speaking tones employed by Mr. Jackson and the Court were conversational tones and voices were not raised throughout the various colloquies or rulings.

21. The Court further certifies that I saw or heard the conduct of Steven Jackson, Esq., constituting the contempt and that it was committed in the actual presence of the Court.

## CONCLUSIONS OF LAW AND JUDGMENT OF CONTEMPT

1. Based on the foregoing facts, the Court concludes that the actions by Attorney Steven Jackson were disobedience by an attorney, an officer of the court, to the lawful orders of the Court commanding his presence to continue the jury selection on the morning of April 17th, and such actions constitute a violation of 18 U.S.C. § 401(3). The contempt was committed in the actual presence of the Court and requires summary disposition under Rule 42(a) of the Federal Rules of Criminal Procedure. The contempt occurred twice on the day of April 16th when Attorney Jackson announced in open court that he was not complying with the order of the Court and would not be present on the four days for which he had unsuccessfully sought a stay only a few minutes earlier. This contempt continued on the morning of April 17th when he failed to appear at the required time of 9:30 or at any time throughout the morning until the Court finally recessed at 1:05 p.m. after completing the jury selection process. To hold that the contempt of April 17th was not committed in the presence of the Court after the announced defiance on April 16th would sim-

ply be some form of judicial sophistry or shadow-boxing under these particular circumstances.

■ 2. Even the failure of an immunized witness to testify is an intentional obstruction of court proceedings when the witness refuses to answer the questions put to the witness. *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 1805, 44 L.Ed.2d 186 et seq. (1975). The fact that Attorney Jackson's defiance was in an otherwise respectful manner does not make it less of a contempt. See 95 S.Ct. at 1806.

■ As indicated by the Court, "the face-to-face refusal to comply with the Court's order itself constitutes an affront to the Court, and when that kind of refusal disrupts and frustrates an on-going proceeding as it did here, summary contempt must be available ...." Ibid.

3. Most of the morning of April 17th was consumed by trying to accommodate defendant Howard Jones' understandable desire to be represented by counsel and get on with his trial. That desire to proceed was joined in by other defendants and counsel. Eleven of the fifteen peremptory challenges had already been exhausted by defendants. So the jury selection procedure was well along towards completion. Only because of the unselfish willingness of Attorney Jeffrey Miller to step in on April 17 and represent defendant Jones, was a further disruption in the proceedings prevented; because of his prompt appearance, the Court was able to resume jury selection at approximately 11:40 a.m. This also precluded the necessity to recess for another day which would have resulted in a huge expense in calling in the jury panel again, a matter that could well have been assessed against Attorney Jackson for his contempt. (However, that, fortunately, is a matter not before the Court.)

4. The undersigned judge regularly attends the church of his choice (Presbyterian) on a weekly basis and applauds the conscientious adherence of Steven Jackson to the observance of his religious faith as he feels is necessary. However, though the Court may sympathize with Mr. Jackson's wishes, it no more excuses his defiance of the Court's order and his shirking of his duties as a lawyer, particularly in view of the tardiness of his motion for stay, than would any other desired form of expression.

*U.S. v. Lespier*, 558 F.2d 624 (1st Cir. 1977), is not precisely the same procedurally but it did present some very similar factual matters. The case involves a plenary appeal from the underlying conviction but the opinion of the Court of Appeals points out at p. 626, that an attorney for a defendant filed a motion for continuance of the longstanding trial date only three working days prior to the trial, reciting that the lawyer would be attending a political meeting thereby making it physically impossible for him to appear on the date set for trial. The trial judge denied the motion, noting that at no time had the lawyer given the court information about the conflict in the schedule, and jury selection commenced. In *Lespier*, the jury was selected and empanelled, and after the court again denied the lawyer's motion for a continuance, the lawyer virtually abandoned his client by making no opening statement, engaged in no cross-examination, presented no witnesses, made no argument to the jury, and apparently participated very little in the charge conference. The verdicts of guilty were returned in less than two hours. The Court of Appeals described the conduct of this lawyer in terms that certainly apply to Mr. Jackson in this case, as follows:

> "The conduct of [the attorney] was no less than either (1) the unrealistic if not contemptuous expectancy that the court, despite elaborate advance scheduling of a trial, would at the last moment subordinate the interest of all others to the personal plans of a lawyer who had not taken the smallest step of giving notice earlier, or (2) the willingness to abandon his client, forcing him to retain trial counsel at the 11th hour when a serious trial and a real possibility of lengthy imprisonment impended." *Id.* at 627.

The court continued, stating that:

> "a standard of values which places an attorney's private political activity above

his responsibilities to the court and to his own clients, even if they approve [which Mr. Jones did not] is fundamentally incompatible with the premises underlying the adversary system." *Id.* at 628.

The court pointed out that this type of conduct would have been clearly punishable as criminal contempt under 18 U.S.C. 401(3). The court subsequently pointed out that if the lawyer believed that the trial court had abused its discretion in denying a continuance, that the proper course would have been to preserve an objection for appeal. The court reversed and remanded for a new trial because the attorney's representation fell below any standard of competent representation.

Mr. Jackson's desire to follow his religious practices does not entitle him to abandon his client or to disrupt the orderly judicial proceedings of this lengthy trial. It is therefore the judgment of this Court that he is in contempt for each of these direct disobediences and that a hearing will be held on Thursday, April 18th, 1984, at 9:30 a.m. in the U.S. District Courthouse, Fort Lauderdale, Florida, in order that Steven Jackson, Esq., may appear to explain any exculpatory, mitigating or extenuating reasons as to his contempt exhibited in this case and to have an opportunity to confer with counsel of his choosing.

5. Despite what Attorney Jackson thinks about this matter, it is not a case involving Mr. Jackson's exercising of his religious practices. It is a case of an officer of the court who failed to advise the Court in ample time of his scheduled conflicts, especially after having assured the Court when the trial date was selected that he had none in April or May. His defiance of the Court's order denying his motion for stay constitutes the contempt.

### SUPPLEMENTAL ORDER

This matter came on before the Court on a petition of Steven Jackson, a lawyer who was removed from representing his client at the start of a lengthy criminal trial, after the Court found the lawyer in contempt for failing to appear and represent his client's interest; additionally, removal occurred after the request of defendant that he receive a new lawyer. Jackson's petition seeks attorneys' fees of $1930.00 and expenses of $117.92 under the provisions of the Criminal Justice Act.

Because of the unusual situation presented here, the Court will enter a separate order on this petition rather than simply indicating the amount approved, if any, in the blank provided on the CJA form.

1. The Court's research reveals no cases in which a lawyer has been removed for contempt and has thereafter filed a petition for reimbursement under the Criminal Justice Act.

2. The Court's research reveals no cases where the defendant has requested a new attorney and the former attorney then petitioned for award of attorneys' fees under the Criminal Justice Act, although it may happen occasionally.

3. The purpose of the Criminal Justice Act is to protect the indigent defendant and afford him as nearly equal footing as possible to other non-indigent defendants. 18 U.S.C. § 3006(A).

4. The amount claimed by Jackson is nearly twice the limitation under the guidelines established by the reviewing courts of appeal for fees under the Criminal Justice Act.

■ With the circumstances of the contempt in mind, we turn to the specifics of Attorney Jackson's petition for reimbursement. The first item claimed under the section for "in court" representation was a sentence hearing. Mr. Jones has not been sentenced—and may well never be—because the jury was unable to arrive at a verdict as to defendant Jones. The only sentence hearing at which Attorney Jackson has ever appeared in this Court was his own. It would be a travesty and a fraud upon the taxpayers in this Court's view to permit funds from the Treasury to be used to reimburse Attorney Jackson for attending his own sentencing.

This Court has approved the petition for attorneys' fees filed by the lawyer who

ably stepped in during the voir dire portion of the trial and managed to achieve a "hung jury" on the several counts as to his client (all the other defendants, except one who was only charged with one count, were found guilty.)

At first this Court considered the possibility of awarding fees to Mr. Jackson for his "preparation time" on a quantum meruit basis. However, the successor attorney had to review the file and prepare himself for trial on a crash basis in the evenings and on weekends. Should the taxpayers be required to reimburse both lawyers for their time spent in preparing for this trial, especially when Mr. Jackson abandoned his client during trial and was held in contempt? This Court thinks not.

The Court is mindful that there could be situations where the first attorney and a successor attorney would both be entitled to reimbursement for the time spent in preparing for trial; for example, if a successor attorney had to be appointed because of illness or injury to the first appointed attorney. However, in circumstances such as the instant case, in which the first attorney participated in the selection of the trial date and affirmatively assured the Court in February that he had no problems with a trial date in April or May other than the first week in April, did not file a written motion thereafter until the morning of trial despite its being a 9-defendant, 4-week trial, did not advise his client or any of the other counsel, and only advised the Court two working days earlier by an oral request made by his brother of his intentions to seek a four-day stay of the trial, especially when it seems most unusual that someone claiming to be that religious would not have been aware of the date of Passover at an earlier date, then the taxpayers should not have to pay two lawyers for the time of preparation to represent one defendant in a trial.

That brings us to the time claimed for calendar calls and for the first day of the trial (even though a portion was spent, albeit in vain, trying to fashion an alternative acceptable to Mr. Jackson and his client which would permit the trial to continue without interruption). This time totals 8 hours and at the statutory rate of $30 per hour equals $240, with the costs expended of $117.22, the amount awarded is $357.22.