**UNITED STATES of America, Plaintiff,**

**v.**

**Pedro Baiges CHAPEL, Defendant.**

**In re Juan Mari BRAS (Contempt).**

**Crim. No. 79–155.**

United States District Court,
D. Puerto Rico.

Nov. 5, 1979.

---

Alberto Tellechea, Asst. U. S. Atty., San Juan, P.R., for the government.

Juan Mari Bras, Rio Piedras, P.R., for defendant Chapel.

Emilo Soler Mari, Rio Piedras, P.R., standby counsel for defendant Chapel.

Emilo Soler Mari, Rio Piedras, P.R., J.L.A. de Passalaqua, Isla Verde, P.R., for the surety José Carreras.

## OPINION, ORDER AND JUDGMENT

TORRUELLA, District Judge.

This matter is presently before us on an unpleasant duty related to criminal contempt charges against a member of the Bar of this Court in connection with his willful refusal to comply with orders of this Court. 18 U.S.C. § 401(3). Having held a hearing on this matter on October 18, 1979 the following constitute our formal findings of fact, conclusions of law and Judgment.

On the very night that Defendant, Pedro Baiges Chapel was arrested [1] Attorney Juan Mari Bras entered a notice of appearance as counsel for Defendant. During a status conference held on this criminal matter on July 20, 1979, attended by Mr. Mari Bras, this case was given a trial date of September 5, 1979. At this time no objection or other comment was made with respect to this trial setting. The pretrial conference on this matter was held before the United States Magistrate on August 21, 1979. Attorney Pedro Varela appeared on behalf of Defendant with Attorney Mari Bras absent.[2] The Magistrate's "Pretrial Memorandum" notes: "The defendant has received full discovery from the government and is ready to proceed for trial." No objection or comment was made with respect to the trial setting. Further, no mention was made, or suggested, with respect to any contemplated request for continuance. On the eve of trial, September 4, 1979 at 12:45 P.M., a "Motion For Continuance"[3] was filed by Defendant's counsel, Mr. Mari Bras, because, among other reasons:

"1. . . .

2. Herein defendant will be outside this jurisdiction on that date due to an

---

1. Defendant was arrested and charged with violating 18 U.S.C. § 1382 on May 19, 1979. He was subsequently convicted.

2. It does not formally appear in the record that Attorney Pedro Varela assumed representation of Defendant. The Magistrate's Pretrial Memorandum gives no explanation for this substitu-

tion of counsel for pretrial conference purposes.

3. This Motion is dated August 22, 1979 but was not filed until September 4, 1979. No explanation is given for the delay in filing this Motion.

engagement that had been previously taken.[4]

3. Defendant's undersigned counsel will be outside this jurisdiction on September 5, 1979 up to September 15, 1979."

This Motion was denied, September 4, 1979 at 1:54 P.M., with notification to both parties. On September 5, 1979 this case was called for trial and neither Defendant nor counsel were present.[5] As a consequence of this nonappearance an arrest warrant was issued for the Defendant. On September 10, 1979 an "Order to Show Cause" was issued against Attorney Juan Mari Bras ordering him to appear before the Court on September 21, 1979 to show cause why he should not be found in contempt pursuant to 18 U.S.C. § 401(3) for failing to appear at trial.

On September 17, 1979 attorney Mari Bras subscribed two Motions filed in this case. The first of these purports to be on behalf of the defendant which, after attacking the decisions of the Court in other related criminal cases, concludes:

"WHEREFORE, notifies herein (sic) that the undersigned attorney is not going to continue representing him in this case, that he refuses to obtain any other legal representation and that he is not going to present any defense in this procedure, other than to refuse to recognize the authority of the Court to judge or condemn him."

The second filing is entitled "Attorney's Reply to Order to Show Cause." Therein attorney Mari Bras states:

"2. That the undersigned does not consider himself obliged legally or morally to give any excuse or explanation to the Court, or in any way respond as to why he should not be held in contempt, since the order is a plain and clear attempt to persecute the undersigned and his client, the defendant, for their struggle in favor of the rights of the people of Vieques to expel the U. S. Navy from its territory and specifically to penalize said defendant, as well as the undersigned, for having participated in the 6th. Summit Conference of Non-Aligned Nation held in Havana from the 1st. to the 9th. days of September, 1979 and for having obtained the complete support and solidarity of said Conference with the struggle of the people of Vieques against the U. S. Navy."

On September 21, 1979 when the hearing on the Order to Show Cause was called defense counsel was again absent. Under authority of Rule 42, Fed.R.Crim.P., an arrest warrant together with a second order to show cause was issued setting a new hearing date for contempt on both the original nonappearance at trial, and for the subsequent nonappearance at the show cause hearing.[6]

On October 18, 1979 a hearing was held on both contempt charges against attorney Mari Bras. As per instructions entered in the Order to Show Cause of September 21, 1979, the United States Attorney's office prosecuted the charge as a petty offense. 18 U.S.C. § 1(3). At this hearing all the above recited facts were proved. In addition it was proved that Attorney Mari Bras was served with notices of both show cause orders that issued.

At the hearing held on contempt charges Attorney Mari Bras [7] presented no evidence

---

4. This admission by counsel is made despite the fact that one of the conditions for Defendant's release on bond was that he was: "Not to travel outside the Island of Puerto Rico without prior written authorization of this Court." No such authorization was granted.

5. Attorneys Pedro Saade and Pedro Varela were present but although their names appear on several Motions filed herein, and despite the fact that Varela had attended the pretrial conference, it was their position that they were not authorized by the Defendant to represent him at trial.

6. The arrest warrant was executed on September 24, 1979. Bail, which was set at $5,000, was never posted and attorney Mari Bras remained committed up to the time of the hearing.

7. Attorney Emilio Soler Mari had been appointed standby counsel to assist Mr. Mari Bras by the United States Magistrate. He was present at the contempt hearing.

nor witnesses on his behalf. He declined to cross examine the one witness presented by the United States Attorney. The only defense or explanation on the charge of contempt for both of his nonappearances was presented in his closing argument wherein he stated in part:

"I reaffirm everything that I have stated in the written motions and during the appearance for arraignment.

"I do not recognize this Court having jurisdiction in right and in law or moral to condemn me."[8]

The above recited facts compel but one conclusion, viz., that Attorney Mari Bras has willfully, intentionally, and contumaciously violated a lawful order of this Court within the meaning of 18 U.S.C. § 401(3). It is clear that "a lawyer's willful absence from his client's trial without a legitimate reason is contemptuous. His disobedience to the order of the court setting the trial date violates 18 U.S.C. § 401(3)." *United States v. Marx*, 553 F.2d 874, 876 (C.A. 2, 1977).[9] Several particular factors in this case, and with respect to this Attorney, buttress this finding. First, the trial setting was set well in advance so as to give adequate notice to counsel to make personal arrangements to be present or to move the Court for continuance. But the Motion for Continuance must have been timely. See: *Cummings v. United States*, 398 F.2d 377 (C.A. 8, 1968). An attorney cannot reasonably expect a court to alter its calendar, and disrupt a scheduled trial to which witnesses have been subpoenaed and to which the adverse party is ready, simply by the filing by counsel of a last minute motion for continuance. All weight of authority is contrary to such wishful speculations. Cf. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); see gen.: Wright, *Federal Practice and Procedure*, Criminal § 832. Under the present factual framework counsel's duty was twofold: he had to assure himself of the Court's disposition of his motion before not appearing and

he had to appear once he knew the motion was denied. See Canons of Professional Ethics, Canons 12 and 18; 4 L.P.R.A. App. IX; *Acevedo v. Compañia Telefónica de P. R.*, 102 D.P.R. 787, 791 (1974); cf. also: *Maness v. Meyers*, 419 U.S. 449, 458–459, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975).

The second particular fact of note is that this conduct of Attorney Mari Bras is not an isolated occurrence. In *United States v. Lespier*, 558 F.2d 624 (C.A. 1, 1977), he was specifically placed on notice that such conduct and tactics were neither proper nor to be tolerated. After reciting facts which are strikingly similar to facts now before us, the Court stated:

"Our narration of these proceedings reveals conduct of counsel which merits memorialization only as an example of what the bar must avoid if courts are to function. The conduct of Mari Bras was no less than either (1) the unrealistic if not contemptuous expectancy that the court, despite elaborate advance scheduling of trial, would at the last moment subordinate the interests of all others to the personal plans of a lawyer who had not taken the smallest step of giving notice earlier, or (2) the willingness to abandon his clients, forcing them to retain trial counsel at the eleventh hour when a serious trial and the real possibility of lengthy imprisonment impended. At the least, this disregard of the court and clients would seem to fly in the face of both the Code of Professional Conduct and the Standards Relating to the Defense Function of the American Bar Association. A standard of values which places an attorney's private political activities above his responsibilities to the court and to his own clients—even if they approve—is fundamentally incompatible with the premises underlying the adversary system." *Id.* at 627–628 (footnote omitted).

A repetition by counsel of contumacious acts is sufficient to support a finding of

---

8. Transcript of Hearing on October 18, 1979, pp. 16–17.

9. This is equally applicable to Mr. Mari Bras' willful nonappearance at the second show cause order.

contempt to warrant the imposition of sanctions. *In Re Allis*, 531 F.2d 1391 (C.A. 9, 1976). The actions taken in the present case demonstrate that the lesson of *Lespier* was mpt ñearmed.[10]

Finally, we address ourselves briefly to what is seemingly the only apparent justification that Attorney Mari Bras has cared to place on record for his nonappearances, i. e., "the Court's lack of legal or moral authority over his person." We do this not because it affects the merits of this cause [11] but because it demonstrates without doubt the very lack of excuse or justification behind this Attorney's actions. He was admitted to the bar of this Court on a completely free and voluntary basis. In doing so he swore to uphold both the Constitution and the laws of the United States. He has been counsel of record in numerous other cases tried, by this, and other Judges of this Court. If his political beliefs or persuasions prevent him and impede him from recognizing the authority of this, or any court, the simple solution would have been for him to have requested the Clerk of this Court to withdraw his name from the Roll of Attorneys admitted to practice and not to have accepted the defense of those accused of crimes before this Court. He must consciously have known that in accepting such cases he would run the risk of coming in conflict with the authority of the Court and at the same time interfering with the presentation of a defendant's case. It hardly advances any right of a defendant for an attorney to prejudice and surrender a client's defense. By any standard of measure a defendant deserves more than this. See Canons 5 and 18, Canons of Professional Ethics, 4 L.P.R.A. App. IX; *In Re Coll*,

101 D.P.R. 799 (1973). By this we do not mean that an attorney should shirk "his duty for fear of judicial disfavor or public unpopularity", Canons of Professional Ethics, Duties of the Lawyer Toward His Clients. 4 L.P.R.A. App. IX. This Court has neither required nor forced this upon Defendant's counsel. "[F]earless, vigorous, and effective performance of every duty pertaining to the office of the advocate on behalf of any person whatsoever" will always be protected by this Court. *Sacher v. United States*, 343 U.S. 1, 13, 72 S.Ct. 451, 457, 96 L.Ed. 717 (1952). "But it will not equate contempt with courage or insults with independence. It will also protect the processes of orderly trial, which is the supreme object of the lawyer's calling." *Id.*, pp. 13–14, 72 S.Ct., p. 457. Mr. Mari Bras' actions have not been faithful to this calling.

For his nonappearances on September 5, 1979 and September 21, 1979 a Judgment has been entered finding Attorney Mari Bras guilty of contempt of Court. 18 U.S.C. § 401(3). It has been the sentence of this Court that Attorney Mari Bras be imprisoned for a period of thirty days. It is a further Order of this Court that he be disbarred from further practice before this Court. A copy of the record of this case and these findings shall be notified to the Supreme Court of the Commonwealth of Puerto Rico and to the Solicitor General of the Commonwealth of Puerto Rico.

IT IS SO ORDERED.

---

**10.** We have found the initial nonappearance punishable as criminal contempt. Clearly, under ordinary circumstances this type of conduct would merit only censure, a small fine, or other similar disciplinary action on the part of the Court. A second deliberate nonappearance, coupled with the tone of the written motions filed by Plaintiff (cf. *In Re Pagán Hernández*, 105 D.P.R. 796 (1977)) left this Court without alternative but to issue notice by Order of Arrest, Rule 42(b), Fed.R.Civ.P., and take into consideration these factors upon sentencing.

**11.** Because the tone of counsel has been general and not specific, and because after careful consideration of the written motions and oral statements of record, we find they evince no "personal embroilment" of counsel with this Judge within the meaning of Rule 42(b) to require disqualification. See: *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971).