216 P.3d 1251

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**John BILLAM–WALKER,**
**Defendant–Appellant.**

**No. 28670.**

Intermediate Court of Appeals of Hawai'i.

Aug. 11, 2009.

As Amended Aug. 12, 2009.

Karen T. Nakasone, Deputy Public Defender, on the briefs, for Defendant–Appellant.

Kimberly Tsumoto Guidry, Deputy Solicitor General, and Dorothy Sellers, Solicitor General, on the briefs, for Plaintiff–Appellee.

FOLEY, Presiding Judge, and FUJISE, J.; and LEONARD, J., Concurring Separately.

1. The Honorable Patrick W. Border presided.

2. HRS § 709–905 provides:
   **§ 709–905  Endangering the welfare of an incompetent person.**  (1) A person commits the offense of endangering the welfare of an incompetent person if he [or she] *knowingly acts in a manner likely to be injurious to the physical or mental welfare of a person who is unable to care for himself [or herself] because of physical or mental disease, disorder, or defect.*
   (2) Endangering the welfare of an incompetent person is a misdemeanor.

Opinion of the Court by FOLEY, J.

Defendant–Appellant John Billam–Walker (Walker) appeals from the Judgment of Conviction and Sentence (Judgment) filed on July 2, 2007 in the Family Court of the First Circuit (family court).[1]  A jury convicted Walker of two counts of Endangering the Welfare of an Incompetent Person, in violation of Hawaii Revised Statutes (HRS) § 709–905 (1993).[2]

On appeal,[3] Walker contends (1) the family court abused its discretion by denying Walker's last motion for a continuance; (2) there was insufficient evidence to convict Walker; (3) the family court erred by admitting unfairly prejudicial evidence; (4) HRS § 709–905 is unconstitutionally vague and overbroad; (5) the family court abused its discretion by denying Walker's motion for mistrial in light of prosecutorial misconduct; (6) the family court's jury instructions or lack thereof were prejudicially erroneous; (7) the family court abused its discretion by requiring Walker to attend domestic violence counseling as a condition of his probation; and (8) the cumulative effect of all of the errors deprived Walker of a fair trial.  Walker asks this court to reverse his conviction.

I.

The family court did not abuse its discretion by denying Walker's last-minute motion for a continuance.  In *State v. Lee,* 9 Haw.App. 600, 856 P.2d 1279 (App.1993), this court recognized that

*courts generally view with disfavor requests for a continuance made on the day set for trial or very shortly before.*  3A C.

(Emphasis added.)

3. This Opinion was originally filed on July 20, 2009 as a Summary Disposition Order and is filed as a published opinion pursuant to this court's August 11, 2009 "Order Granting State of Hawai'i's Motion for Publication of Summary Disposition Order and Vacating Summary Disposition Order filed on July 20, 2009."

Wright, *Federal Practice and Procedure: Criminal 2d* § 832 at 263 (1982) (citations omitted). As one United States District Court has articulated:

> An attorney cannot reasonably expect a court to alter its calendar, and disrupt a scheduled trial to which witnesses have been subpoenaed and to which the adverse party is ready, simply by the filing by counsel of a last minute motion for continuance. All weight of authority is contrary to such wishful speculations.

*United States v. Chapel*, 480 F.Supp. 591, 594 (D.Puerto Rico 1979).

*Id.* at 603–04, 856 P.2d at 1281–82 (emphases added).

In the instant case, Walker's request for a continuance was not brought until a week before trial was to begin—approximately ten months after the complaint had been filed, six months after the Public Defender's office began representing Walker, and approximately one month after defense counsel had been assigned on May 14, 2007 to Walker's case—when the family court was ready to proceed and the State's witnesses had been subpoenaed.

Contrary to defense counsel's assertions, defense counsel had been given adequate time and resources to prepare for trial, where counsel had been timely provided over 600 pages of requested discovery and had one month to prepare. *See State v. Torres*, 54 Haw. 502, 510 P.2d 494 (1973) (holding

that twenty-four hours was adequate time for court-appointed counsel to prepare a "simple" case). Furthermore, proceeding without the Etheringtons present was not an abuse of discretion because their testimonies would not have any direct bearing on the issue of guilt.[4] *See Lee*, 9 Haw.App. at 605, 856 P.2d at 1282 (denying a continuance was not an abuse of discretion where the proffered testimony would at most go to assessing the complainant's credibility and not bear directly on the issue of guilt). Under such circumstances, the family court's failure to grant another continuance was not an abuse of discretion.[5]

## II.

There was sufficient evidence for the family court to convict Walker. During trial, the State presented the following evidence to establish that Complainant was "unable to care for himself because of physical or mental disease, disorder, or defect" and that Walker knew his actions were "likely to be injurious to the physical or mental welfare" of Complainant. *See* HRS § 709–905.

Dr. Loomis, a psychologist who examined Complainant, testified that in his professional opinion, Complainant was and would remain unable to care for himself because of significant functional limitations in his communication skills, limitations in his self-care, and permanent mental disabilities.[6]

Gibo, a program director at Catholic Charities Hawai'i, testified that Complainant had

4. With respect to the additional "two percipient witnesses" who, defense counsel asserted, would provide exculpatory testimonies, the family court properly exercised its discretion in denying Walker's motion where defense counsel waited until the week before trial to suggest a potential defense witness who had not yet been interviewed and counsel failed to make a formal offer of proof showing that the witnesses existed, would in fact be called, and would be available and willing to testify.

5. In light of the foregoing reasons, any error in calculation by the family court for purposes of HRPP Rule 48 would have been harmless beyond a reasonable doubt.

6. Specifically, Dr. Loomis testified on direct examination as follows:

> Q [State] Based upon your training, experience, education, and these tests and examination you did of [Complainant], would you say within a reasonable degree of psychological certainty that [Complainant's] mental disabilities are permanent?
> A [Dr. Loomis] Yes.
> Q Why do you say that?
> A Usually people that are testing as moderately mentally retarded are going to remain that through the rest of their life. There's not likely to be any kind of change for that. Especially if they tested consistently in that area through their younger years.... [Complainant's] history was one that happened, cognitive deficits through his life.
> Q Based upon your training, experience and education and clinical examination, can you say within a reasonable degree of medical

been diagnosed with moderate mental retardation, seizure disorder, and autistic tendencies. Gibo further testified that Walker had completed the training and education to work as a job coach; was aware of Complainant's disabilities; had access to Complainant's file and chart; had been trained to implement Complainant's care plan; had been instructed in positive behavior support, adverse events training, and the laws affecting people with disabilities; and had attended specific modules on specific disabilities.

Martinez and Juxa, two of Complainant's co-workers, testified that the way Walker spoke to, yelled at, and grabbed Complainant during work was alarming enough for them to report the behavior to a supervisor and/or confront Walker directly. Olson, Complainant's job coach after Walker, testified that at a September 16, 2005 dance, Walker assaulted Complainant to Olson's "shock" and Walker said to Olson "Do you know [Complainant] is a fucking retard," "[Complainant's] bad and he's no good," and "I had to hit [Complainant] and pinch him and push him to make him do work when I was his job coach."

The foregoing testimonies, particularly when viewed in the light strongest for the State, substantially support the findings that Complainant was unable to care for himself because of a mental disability and Walker knew his actions were likely to injure Complainant's physical or mental welfare. There

was sufficient evidence to convict Walker under HRS § 709–905.

### III.

█ The family court did not abuse its discretion by admitting "unfairly prejudicial evidence." During trial, the family court admitted testimonies of how Walker and other job coaches coached Complainant; how Complainant behaved under Walker's and other job coaches' care; how Dr. Loo, Complainant's current psychologist, advised Complainant not to testify at trial to avoid significantly increasing his distress level; and what Olson observed during the dance. Apparently, the family court found the testimonies to be relevant as to whether Walker "knowingly act[ed] in a manner likely to be injurious to the physical or mental welfare of [Complainant]" and not substantially outweighed by the danger of unfair prejudice. The family court's decision reflects no manifest abuse of discretion.[7]

### IV.

█ HRS § 709–905 is not unconstitutionally vague or overbroad. Under HRS § 709–905, a person endangers the welfare of an incompetent person if he or she "knowingly acts in a manner likely to be injurious to the physical or mental welfare of a person who is unable to care for himself [or herself] because of physical or mental disease, disorder,

certainty that [Complainant's] mental disabilities render him unable to care for himself?
A Yes.
Q And live independently (inaudible)?
A I would be extremely, extremely surprised if he ever lived independently. I don't think that's possible.
On cross-examination, Dr. Loomis testified as follows:
Q One of the things, Doctor, that you had testified to is that [Complainant's] disabilities are permanent?
A Yes.
Q And that you would be surprised if he would be able to live independently?
A Living independently without supervision, yes.
Q But it's not impossible?
A I've evaluated, I would say, hundreds of people that are functioning moderately mental-

ly retarded range. I never met anybody that was able to live completely independently, not at that level.

7. As to Walker's contention that the State improperly elicited Olson's testimony that Complainant rubbed his arm after encountering Walker at the dance, the family court's error in overruling Walker's objection to the State's leading question was harmless beyond a reasonable doubt. The testimonies of Complainant's Mother, Dr. Loomis, Dr. Loo, Gibo, Martinez, and Juza, as well as the remaining portions of Olson's testimony, provided substantial evidence for Walker's conviction. Any error with respect to Olson's testimony, therefore, would not have affected Walker's substantial rights.

or defect." Walker contends the phrase "likely to be injurious" is unconstitutionally vague. Under a plain reading of the statute, however, the language is reasonably clear and provides sufficient notice to a person of ordinary intelligence that knowingly engaging in conduct that would probably cause harm to an incompetent person's welfare is prohibited. *See State v. McKee*, 392 N.W.2d 493 (Iowa 1986) (holding that a statute, proscribing willful acts likely to be injurious to a health care facility resident's physical welfare, was not unconstitutionally vague, where the words' plain meanings clearly prohibited intentional engagement in conduct that would probably cause injury to the body). Walker's vagueness claim is without merit.

■ Walker's claim that HRS § 709-905 is unconstitutionally overbroad is also meritless. Walker argues that the statute impermissibly restricts companions or caregivers from scolding, lecturing, or verbally redirecting an incompetent person for fear of hurting the incompetent person's feelings, lowering his or her self-esteem, or causing larger physiological or psychological reactions. HRS § 709-905 is clear that the accused must willfully engage in conduct that would likely harm the incompetent person's welfare, "which is the antithesis of an intentional act that may injure but is performed in the [incompetent person's] best interest." *McKee*, 392 N.W.2d at 495. The specific acts for which Walker was convicted, furthermore, were not constitutionally protected; Walker had no constitutional right to engage in conduct he knew was likely to injure Complainant. *See State v. Gaylord*, 78 Hawai'i 127, 142, 890 P.2d 1167, 1182 (1995) ("The simple fact is that [defendant] has no constitutional right to be a thief."). HRS § 709-905 is not unconstitutional.

### V.

■ The family court did not err by denying Walker's motion for mistrial based on alleged prosecutorial misconduct. Any impropriety created by the State's questioning of, or responses provided by, Gibo and Olson

was sufficiently cured when the family court subsequently sustained Walker's objections, struck the statements, and provided corrective instructions ordering the jury to disregard the statements. *See State v. Wakisaka*, 102 Hawai'i 504, 516, 78 P.3d 317, 329 (2003) ("Generally, we consider a curative instruction sufficient to cure prosecutorial misconduct because we presume that the jury heeds the court's instruction to disregard improper prosecution comments.").

Walker argues that the family court's instruction to disregard evidence was inadequate because it was addressed to "you" and not explicitly to the jury and the instruction told the jury that the jury "can" rather than "must" disregard the offending evidence. Prior to the start of testimony, the family court instructed the jury that "any testimony which I have ordered excluded and to be stricken you will be required to disregard and it's not a part of the evidence."

### VI.

The family court's jury instructions or lack thereof were not prejudicially erroneous. On direct examination, the family court sustained Walker's objection to Complainant's Mother's testimony that "[Complainant] kept saying things like, I am not supposed to tell you—." Where the unfinished statement did not directly or indirectly refer to or otherwise prejudice Walker, the family court's determination that no jury instruction was necessary was not prejudicially insufficient, erroneous, inconsistent, or misleading and could not reasonably have contributed to Walker's conviction. *State v. Pond*, 118 Hawai'i 452, 461–62, 193 P.3d 368, 377–78 (2008).

The family court also did not err by failing to explain that the stipulated testimony of Mr. Etherington should be accepted as a conclusively proved fact. Prior to approving the stipulation, the family court consulted with the parties and established that the jury would be hearing a stipulation of expected testimony, not fact. Accordingly, the family court permitted Walker to present the stipulation, which was explained as follows:

THE COURT: ... *It wouldn't be evidence in a written form, you may read it to the jury. This is part of the defense case-in-chief.*

....

[DEFENSE COUNSEL]: Mr.... Etherington is not currently in the state and is therefore unavailable to testify today. [Walker] ... and the State ... *hereby stipulate and agree that if Mr. Etherington were to testify as a witness by the defense he would offer the following testimony.*

(Emphases added.) The family court also instructed the jury, stating: "It is your exclusive right to determine whether and to what extent a witness should be believed, and to give weight to his or her testimony accordingly." The family court properly instructed the jury on the stipulation's evidentiary value.

■ With respect to Jury Communication No. 2, the family court's failure to include the communication in the record and inform the parties of the communication did not amount to prejudicial error where the family court had instructed the jury, prior to its deliberations, to "not surrender your honest belief as to the weight or effect of the evidence for the mere purpose of returning a verdict" and "take such time as you feel is necessary for your deliberations." *See State v. Klinge*, 92 Hawai'i 577, 592, 994 P.2d 509, 524 (2000) (internal quotation marks, citation, and ellipsis omitted) ("As a rule, juries are presumed to follow all of the trial court's instructions."). We do not address Walker's claim concerning the family court's failure to respond to the

communication where Walker fails to provide the reasons for this contention and cite to the authorities, as required by Hawai'i Rules of Appellate Procedure Rule 28(b)(7).

## VII.

■ The family court did not abuse its discretion by requiring Walker to attend domestic violence counseling as a condition of his probation. Under HRS § 706–624(2) (Supp.2008), the family court is free to impose discretionary conditions of probation that are "reasonably related to the factors set forth in section 706–606 [ (1993) ] [8] and to the extent that the conditions involve only deprivations of liberty ... as are reasonably necessary for the purposes indicated in section 706–606(2)." "In order for there to be a rational exercise of discretion some factual basis for imposing such probationary conditions must inhere in the record." *State v. Kahawai*, 103 Hawai'i 462, 466, 83 P.3d 725, 729 (2004).

In the case at hand, Walker was charged with Endangering the Welfare of an Incompetent Person based on substantial evidence that he assaulted Complainant. Pursuant to HRS § 706–606(2)(d), the family court had discretion to sentence Walker to whatever "correctional treatment" the court deemed most effective. Therefore, the family court did not abuse its discretion by requiring Walker to attend domestic violence counseling.

## VIII.

For the foregoing reasons, Walker's final claim that he was denied a fair trial is without merit.

8. HRS § 706–606 provides:

§ **706–606 Factors to be considered in imposing a sentence.** The court, in determining the particular sentence to be imposed, shall consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed:

(a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;

(b) To afford adequate deterrence to criminal conduct;

(c) To protect the public from further crimes of the defendant; and

(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available; and

(4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

IX.

The Judgment of Conviction and Sentence filed on July 2, 2007 in the Family Court of the First Circuit is affirmed.

I concur in the result.